UNITED STATES, Appellee

v.

Matthew M. DIAZ, Lieutenant Commander,
Judge Advocate General Corps
U.S. Navy, Appellant

No. 09-0535

Crim. App. No. 200700970

United States Court of Appeals for the Armed Forces

Argued March 2, 2010

Decided July 15, 2010

BAKER, J., delivered the opinion of the Court, in which EFFRON,
C.J., and ERDMANN, STUCKY, and RYAN, JJ., joined.


<u>Counsel</u>

For Appellant:  <u>Kathleen J. Purcell</u>, Esq. (argued); <u>Lieutenant
Kathleen L. Kadlec</u>, JAGC, USN, <u>Lieutenant Michael E. Maffei</u>,
JAGC, USN, <u>Robin B. Johansen</u>, Esq., and <u>Kari Krogseng</u>, Esq. (on
brief); <u>Captain Kyle R. Killian</u>, USMC.

For Appellee:  <u>Lieutenant Brian C. Burgtorf</u>, JAGC, USN (argued);
<u>Colonel Louis J. Puleo</u>, USMC, and <u>Brian K. Keller</u>, Esq. (on
brief); <u>Captain Mark V. Balfantz</u>, USMC, and <u>Captain Robert E.
Eckert Jr.</u>, USMC.

Amicus Curiae for Appellant:  <u>Donald G. Rehkopf Jr.</u>, Esq. (on
brief) – for the National Association of Criminal Defense
Lawyers; <u>Kenneth W. Starr</u>, Esq. (supervising attorney), <u>Kelsey
Stapler</u> (law student), and <u>Melissa Thornsberry</u> (law student) (on
brief) – for Pepperdine University School of Law.

Military Judge:  Daniel E. O'Toole

<u>**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION**</u>.

United States v. Diaz, No. 09-0535/NA

Judge BAKER delivered the opinion of the Court.

A general court-martial composed of members convicted Appellant, contrary to his pleas, of one specification of violating a lawful general order, one specification of conduct unbecoming an officer and a gentleman, one specification of communicating classified information, and one specification of removing classified material, in violation of Articles 92, 133, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 933, 934 (2000). The members sentenced Appellant to six months confinement and dismissal from the Navy. The convening authority approved the findings and the sentence as adjudged. The United States Navy-Marine Corps Court of Criminal Appeals (CCA) affirmed. United States v. Diaz, No. NMCCA 200700970, 2009 CCA LEXIS 79, at *16, 2009 WL 690617, at *6 (N-M. Ct. Crim. App. Feb. 19, 2009).

On Appellant's petition, we granted review of the following issues:

  I.    WHETHER THE LOWER COURTS MISREAD THE SCIENTER AND
        NATIONAL SECURITY ELEMENTS OF THE ESPIONAGE ACT.

  II.   WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION IN
        REJECTING AS IRREGULAR APPELLANT'S PROFFERED GUILTY
        PLEA TO A VIOLATION OF ARTICLE 133.

  III.  WHETHER THE EVIDENCE OF THE CIRCUMSTANCES UNDER WHICH
        AN ACCUSED ACTED, INCLUDING HIS MOTIVE, IS RELEVANT TO
        A CHARGE UNDER ARTICLE 133.

2

United States v. Diaz, No. 09-0535/NA

For the reasons set forth below, we conclude that the lower courts did not misread the elements of the Espionage Act and that the military judge did not abuse his discretion in rejecting Appellant's proffered guilty plea to a violation of Article 133, UCMJ. We further conclude that the military judge erred by denying Appellant the opportunity to introduce motive evidence to defend against the charge under Article 133, UCMJ. We find, however, that any error was harmless. Therefore, the decision of the court below is affirmed.

BACKGROUND

From July 6, 2004, to January 15, 2005, Appellant was assigned to Joint Task Force Guantanamo Bay (GTMO) as a Deputy Staff Judge Advocate (SJA). Upon arriving at GTMO Appellant received an initial security briefing and signed an acknowledgment of that briefing. He also received a security memorandum addressing prohibited activities, which included "[c]ommunicating, discussing or disseminating classified information" relating to any operations at GTMO and "[u]sing non-secure means to discuss classified information" regarding such operations.

When Appellant arrived at GTMO most of the Guantanamo detainees had been held at GTMO for two years or more. See Rasul v. Bush, 542 U.S. 466, 471 (2004) ("Since early 2002, the U.S. military has held [the petitioners in this case] —— along

3

United States v. Diaz, No. 09-0535/NA

with, according to the Government's estimate, approximately 640 other non-Americans captured abroad -- at the naval base at Guantanamo Bay."). On June 28, 2004, the Supreme Court of the United States released its opinion in Rasul, holding that the United States District Court for the District of Columbia has "jurisdiction to hear petitioners' habeas corpus challenges to the legality of their detention" at GTMO. Id. at 483. The Court reasoned that "[n]o party questions the District Court's jurisdiction over petitioners' custodians. [The federal habeas statute], by its terms, requires nothing more." Id. at 483-84 (citation omitted).

On October 20, 2004, the United States District Court for the District of Columbia, the federal district court supervising detainee habeas proceedings, held that the petitioners, detainees at GTMO, were entitled to legal counsel. Al Odah v. United States, 346 F. Supp. 2d 1, 14-15 (D.D.C. 2004). Looking at the Supreme Court's holding in Rasul, the District Court reasoned:

> The Supreme Court has found that Petitioners have the right to bring their claims before this Court, and this Court finds that Petitioners cannot be expected to exercise this right without the assistance of counsel. . . . Therefore . . . Petitioners are entitled to counsel, in order to properly litigate the habeas petitions presently before the Court and in the interest of justice.

4

Id. at 8.  The District Court further stated that "[t]he federal habeas statute, the Criminal Justice Act, and the All Writs Act, operate together to create this entitlement."  Id. at 14-15 (citations omitted).

On December 17, 2004, Barbara Olshansky, an attorney working for the Center for Constitutional Rights (CCR) in New York City, wrote letters to the Secretary of Defense, the Secretary of the Navy, and senior Department of Justice attorneys seeking names and information regarding detainees held at GTMO.  Appellant was the point of contact for such correspondence at GTMO.  In January 2005, the judge advocates at GTMO, after consulting with leadership in the Department of Defense and Southern Command, agreed to a response rejecting Ms. Olshansky's request.

On January 2, 2005, Appellant used his computer to run a search on the Joint Detainee Information Management System (JDIMS), seeking a list of detainees.  The military judge found that JDIMS is a web-based repository of sources in which detainee information and intelligence is collected and stored. To access JDIMS one must first log onto SIPR, which is a SECRET level computer system.  The majority of information in the JDIMS system is considered classified.  Colonel (COL) Randall Keys, a judge advocate in the Army, was stationed at GTMO from May 2004 to May 2005 and was one of Appellant's superior officers.  COL

Keys testified that in the absence of a security banner stating "SECRET" or some other overtly stated classification level, the default level of information on JDIMS would be considered classified.  At trial he testified to the following:

> Q:  If [information on JDIMS] didn't [have classification markings on it] and you had to print it out for any reason, how would you have treated that information?
>
> A:  As classified.
>
> Q:  Why would you do that?
>
> A:  Because the database -- I mean the database was on a secured server . . . -- it didn't necessarily have a classification mark on every page, but . . . the assumption was . . . if it was on the SIPR computer in a -- in a classified database, you would start with the assumption it was classified, unless, applying the classification guidance somehow, you decided that it wasn't.

While logged onto JDIMS Appellant printed out the list of names of detainees then being held at GTMO.  The printout included each detainee's full name, "Internment Serial Number," country of origin, country of citizenship, and other identifying information, including ethnicity, source identification number, and information regarding the detention or interrogation team assigned to each detainee.  The printouts themselves were not marked with a classification label.

Two weeks later, on January 14, 2005, Appellant transmitted the list of names of detainees to Ms. Olshansky in New York City.  He did so by cutting the printout into more than twenty

pieces of paper, placing them in a Valentine's Day card, and mailing them to Ms. Olshansky.  Ms. Olshansky did not have a security clearance and was not authorized by the government to access detainee information in the JDIMS system.  She did not read the entire list of names contained in the document in the card.  Ms. Olshansky and her colleagues at CCR discussed the card and its contents, holding them for approximately two weeks, during which time the card and its contents were kept locked in a file cabinet drawer.  Recognizing that the document probably should not have been sent to her, she also consulted an attorney.  She then contacted the judge handling the GTMO detainee habeas case she had recently filed on behalf of her organization.  A court security officer retrieved the documents and accompanying Valentine's Day card.

DISCUSSION

Issue I:  The Espionage Act

We review a military judge's decision to exclude evidence for an abuse of discretion.  United States v. Barnett, 63 M.J. 388, 394 (C.A.A.F. 2006).  "[A] military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect."  United States v. Ayala, 43 M.J. 296, 298 (C.A.A.F. 1995).  A question of statutory interpretation is a question of law subject to de novo review.  United States v. Martinelli, 62 M.J. 52, 56 (C.A.A.F. 2006).

7

Sections 793 and 794 of Title 18 of the U.S. Code, as amended, popularly titled the Espionage Act, include eight subsections proscribing in some manner the transfer and/or disclosure of certain national security information. 18 U.S.C. §§ 793-794 (2000). Appellant was charged with violating § 793(b) and § 793(e) of the Act. He was acquitted of Charge III, Specification 1, the § 793(b) charge; he was found guilty of Specification 2, the charge under § 793(e). That section states:

> Whoever having unauthorized possession of, access to, or control over any document, writing, code book, signal book, sketch, photograph, photographic negative, blueprint, plan, map, model, instrument, appliance, or note relating to the national defense, or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted or attempts to communicate, deliver, transmit or cause to be communicated, delivered, or transmitted the same to any person not entitled to receive it, or willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it . . . [s]hall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 793(e).

Before trial, the Government filed a motion in limine to exclude certain evidence, which Appellant might have offered to negate his intent to distribute classified information. Among other things, the Government sought to prevent Appellant from

introducing:  (1) whether or not the release of the information

was consistent with the sworn oath of a commissioned officer;

(2) the ethical obligations of a judge advocate or a practicing

attorney; (3) the Supreme Court decision in Rasul; and (4) the

legality or illegality of United States Government policies on

detainees.[1]  Regarding the evidence of Appellant's oath as an

officer and any ethical obligations he may have had, the

military judge concluded as follows:

> Though the defense has proffered those as the elements
> of the defense of justification, the court finds that
> there is no evidence on the record of which ethical
> obligation is at issue with respect to a Judge
> Advocate or the obligation of an attorney, or why it
> would apply to this particular accused under these
> circumstances.
>
> In addition, the same is true with respect to
> consistency or non-consistency of action with the
> sworn oath of a commissioned officer.

The military judge then granted the Government's motion,

stating:

> [T]he Government's Motion in Limine to exclude the
> testimony is granted as to whether the information was
> consistent with the oath of a sworn commissioned
> officer, the ethical obligations of a Judge Advocate,
> the ethical obligations of an attorney, and . . .
> consistent with any mandate from Rasul v. Bush.

---

[1] Appellant sought to have Joseph Margulies testify about extenuating circumstances under which Appellant acted, about the Supreme Court's decision in Rasul, and about delay tactics employed by Department of Defense personnel in response to requests by attorneys litigating habeas corpus cases on behalf of detainees held at Guantanamo Bay.  The military judge rejected these requests, stating that Appellant "failed to show" that the testimony of Mr. Margulies "is necessary."

Appellant argues that the military judge abused his discretion in granting the Government's motion because the proffered evidence could have, and in his view would have, negated the "mens rea requirement" of the Espionage Act.  Had he been allowed to present this evidence, Appellant would have sought to demonstrate that he intended no harm to the United States and acted only to uphold the Constitution as interpreted by the Supreme Court in Rasul.

The hinge of Appellant's argument is that the Espionage Act has a heightened mens rea requirement, which he alternatively describes as an "intent to do harm" or "bad faith."[2]  Thus, his proffered evidence, which he argues showed good faith, would negate his criminal intent.  Appellant finds this heightened mens rea requirement in Gorin v. United States, in which the Supreme Court stated:

> The obvious delimiting words in the statute are those
> requiring "intent or reason to believe that the
> information to be obtained is to be used to the injury
> of the United States, or to the advantage of any
> foreign nation."  This requires those prosecuted to
> have acted in bad faith.  The sanctions apply only
> when scienter is established.  Where there is no
> occasion for secrecy . . . there can, of course, in

---

[2] With regard to Issue I, Appellant describes this as an element of scienter involving his knowledge of the harm that "would" or "could" befall the United States.  For purposes of addressing Appellant's arguments, we address the mental state required under § 793(e) generally, rather than parsing the mens rea into what might be viewed as alternative elements of intent, knowledge, or recklessness.

    all likelihood be no reasonable intent to give an
    advantage to a foreign government.

312 U.S. 19, 27-28 (1941).  He also finds support for his position in subsequent federal courts of appeals cases, including United States v. Morison, 844 F.2d 1057 (4th Cir. 1988).  In that case, a judge on the United States Court of Appeals for the Fourth Circuit stated in a concurring opinion, "the espionage statute has no applicability to the multitude of leaks that pose no conceivable threat to national security." Id. at 1085 (Wilkinson, J., concurring).  Another judge on the panel in Morison, writing in a separate concurring opinion, stated:  "[N]otwithstanding information may have been classified, the government must still be required to prove that it was in fact potentially damaging . . . or useful."  Id. at 1086 (Phillips, J., concurring specially) (ellipsis in original) (quotation marks omitted).

    There are two problems with Appellant's mens rea analysis. First, Appellant was convicted of violating § 793(e) rather than being convicted under § 793(a) or § 793(b), both of which require a higher measure of mens rea, as did the antecedent § 2(a) that was at issue in Gorin.  The mens rea requirement contained in § 793(e) is clear:  it does not include an element of bad faith or ill intent.  The mens rea prescription in § 793(e) pertains to "[w]hoever having . . . information relating

to national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, willfully . . . communicated, delivered, or transmitted . . . the same to any person not entitled to receive it."  The critical language is, of course, that the accused "has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation" (emphasis added).  This contrasts with § 793(a), which requires an "intent or reason to believe that the information is to be used to the injury of the United States" (emphasis added).  "Willfulness," in the context of § 793(e), arises not in the context of bad intent, but in the conscious choice to communicate covered information.  In short, the military judge and Court of Criminal Appeals got it right in this case.

Second, the law in the military justice system is well-settled on this point.  In United States v. McGuinness, the appellant argued that the term "willfulness" in § 793(e) "includes an element of bad faith, evidenced by a sinister purpose to injure the interests of the United States."  35 M.J. 149, 153 (C.M.A. 1992).  This Court disagreed.  It held that the military judge was correct to instruct that § 793(e) does not require proof of a defendant's bad faith.  Id.  The Court explained its reasoning as follows:

   The statute in question is part of the Espionage Act of 1917, as amended by the Internal Security Act of 1950. When a statute is a part of a larger Act . . . the starting point for ascertaining legislative intent is to look to other sections of the Act in pari materia with the statute under review. Sections 793(a) and 794(a) require that the act be done, with intent or reason to believe that the information is to be used to the injury of the United States, or to the advantage of any foreign nation. Sections 793(d) and (e), however, require only that the accused act "willfully." The current version of § 793(e), as amended in 1950, criminalizes willful retention of classified materials by someone not authorized to retain them. Section 793(f) has an even lower threshold, punishing loss of classified materials through "gross negligence" and punishing failing to promptly report a loss of classified materials. While § 794 covers "classic spying," § 793(e) covers a much lesser offense than that of "spying."

   Based on our analysis of the statute in question and a review of its legislative history, we conclude that there is no basis in the legislative record for finding that Congress intended to limit prosecutions for violation of § 793(e) to classic spying. To the contrary, it is clear that Congress intended to create a hierarchy of offenses against national security, ranging from "classic spying" to mere losing classified materials through gross negligence.

Id. (citation and quotation marks omitted).[3]

---

[3] We note here that the Fourth Circuit, on which Appellant relies, has construed § 793(e) similarly. In United States v. Truong Dinh Hung, which Appellant cites for the opposite proposition, the Fourth Circuit analyzed the requisite mental state in § 793(e). 629 F.2d 908, 919 (4th Cir. 1980). There the Fourth Circuit compared § 793(e) to § 794(a), rather than to § 793(a). However, the Fourth Circuit nonetheless stated that § 793(e) "does not contain the same strong scienter language of § 794(a). Rather, it requires only that the defendant have 'reason to believe' that the national defense information could be used to harm the United States or to aid a foreign nation." Id.

Returning to the facts of this case, Appellant is correct that classification alone does not satisfy the mens rea requirement of § 793(e). Surely classification may demonstrate that an accused has reason to believe that information relates to national defense and could cause harm to the United States. However, not all information that is contained on a classified or closed computer system pertains to national defense. Likewise not all information that is marked as classified, in part or in whole, may in fact meet the criteria for classification. Conversely, information that is not so marked may meet the standards for classification and protection. This is evident enough with respect to information received through oral means or information the recipient should have reason to believe warrants protection. Indeed, the military judge in this case found that "the JDIMS system itself does not bear security classification banners and that the . . . document at issue in this case . . . was printed from the JDIMS system without a security classification marking on it."

The record further indicates that the names of GTMO detainees, their citizenship, and their nationality had been declassified at the time of trial. However, other information, according to trial testimony, could reveal sources and methods of intelligence gathering and remained classified. Among other things, the internment serial numbers of the detainees remained

14

classified.  The unclassified record also indicates that "[t]he column regarding what Detention Team -- or what Interrogation Team is assigned to that detainee has never been declassified." Further, the "source identification number is still a classified piece of evidence."  If publicly disclosed, the classified and unclassified testimony indicates this information could be used to the injury of the United States.[4]

The evidence indicates that Appellant should have been aware of this fact.  He was an officer in the Navy.  He knew he was dealing with sensitive material derived from a classified computer system:  he received an initial security briefing upon arriving at Joint Task Force GTMO; signed an acknowledgment of the briefing; and received a pocket guide that explained what types of information were sensitive and prohibited from disclosure, as well as the rules governing communication about detainees.  He intentionally revealed this sensitive material to Ms. Olshansky, an employee of an outside organization and an

_____

[4] What injury might ensue and why was the subject of more than forty pages of classified testimony from Paul Rester, a civilian employee of the Defense Intelligence Agency who, at the time of trial, was Director of the Joint Intelligence Group, Joint Task Force GTMO, and had previously served as the Supervisory Intelligence Officer for Interrogation from April to August 2002.  We have reviewed this testimony with care.  The Government's conclusion that public release of the information in question may have been harmful to the United States is credible.  We note as well that Appellant has not challenged before this Court the military judge's application of Military Rule of Evidence (M.R.E.) 505 to this information nor his decision to seal this portion of the record.

individual not authorized to receive it.  Importantly,
Appellant's awareness of the potential for harm through the
unauthorized release of the data is evidenced by the clandestine
manner in which he distributed this classified information.
Appellant's conduct therefore satisfies the mens rea requirement
of § 793(e), as that element is correctly defined in law.  He
knew or should have known that the information "could be used to
the injury of the United States or to the advantage of any
foreign nation."  Evidence of motive derived from the proffered
evidence would not have negated this element.  The record
therefore supports the military judge's conclusions.

With respect to Appellant's first issue, the evidence
Appellant sought to introduce at trial does not refute the
requisite mens rea, as interpreted by this Court and virtually
every other court that has construed § 793(e).[5]  It is also
notable that, when asked at oral argument, appellate defense
counsel stated that the military judge instructed the members
"satisfactorily" regarding the elements other than what
Appellant calls the "bad faith" requirement.  Finally, proof of
Appellant's motive is irrelevant on this issue.  Although motive
evidence may be relevant where it is circumstantial evidence of
intent, in this case Appellant's motive was unrelated to his

---

[5] See, e.g., Truong Dinh Hung, 629 F.2d at 919; Morison, 844 F.2d
at 1071; McGuinness, 35 M.J. at 153.

intent.[6] Any noble motives Appellant might have harbored, including what he may have thought was in compliance with a Supreme Court ruling, were irrelevant to his intentional act of physically mailing the names of detainees and coding information related to these names. Accordingly, the military judge did not abuse his discretion when he granted the Government's motion in limine or in his reading of the Espionage Act.

### Issue II: Appellant's Attempted Guilty Plea

We review a military judge's decision to accept or reject a guilty plea as "irregular" for an abuse of discretion. United States v. Inabinette, 66 M.J. 320, 322 (C.A.A.F. 2008). Military judges are afforded "broad discretion" in deciding whether or not to accept such a plea. Id. When an accused enters a guilty plea, the military judge is required to make "such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea." Rule for Courts-Martial (R.C.M.) 910(e).

R.C.M. 910(a)(1) allows an accused to plead guilty to a specification with exceptions and substitutions to the initial charge. R.C.M. 910(b), on the other hand, permits a military judge to reject such pleas if the exceptions and substitutions render it "irregular." The Discussion to R.C.M. 910(b) explains

---

[6] See United States v. Huet-Vaughn, 43 M.J. 105, 114 (C.A.A.F. 1995) (holding that motive evidence is irrelevant where it does not present a viable defense).

17

that an irregular plea "includes pleas such as guilty without criminality or guilty to a charge but not guilty to all specifications thereunder."

At trial, Appellant sought to plead guilty to Charge II and its Specification by exceptions.[7]  Charge II presented a violation of Article 133, UCMJ.  This offense has only two elements:  (1) that the accused did or omitted to do certain acts; and (2) that, under the circumstances, these acts or omissions constituted conduct unbecoming an officer and gentleman.  Manual for Courts-Martial, United States pt. IV, para. 59.b(2) (2005 ed.) (MCM).  The focus of Article 133, UCMJ, is the effect of the accused's conduct on his status as an officer.  United States v. Conliffe, 67 M.J. 127, 132 (C.A.A.F. 2009).  The test for a violation of Article 133, UCMJ, is "'whether the conduct has fallen below the standards established for officers.'"  Id. (quoting United States v. Taylor, 23 M.J. 314, 318 (C.M.A. 1987)).

In his guilty plea Appellant attempted to substitute for the words "classified documents" the phrase "government information not for release."  The military judge determined

---

[7] The specification at issue, in relevant part, states:  "In that Lieutenant Commander Matthew M. Diaz, JAGC, U.S. Navy . . . did, at or near Guantanamo Bay, Cuba . . . wrongfully and dishonorably transmit classified documents to an unauthorized individual."

that the guilty plea as submitted was irregular. In particular, he concluded:

> The tendered plea by exceptions and substitutions alters not just a factor in aggravation, but the very nature of the information at issue and the gravaman of the charge. Classified information is not a variety of fruit which can be alternately pled as a different apple or orange. . . . It cannot be re-described and maintain the same offense.

On appeal, Appellant argues that the military judge abused his discretion in misconstruing the elements of a "regular plea" when he rejected Appellant's attempt to plead guilty through exceptions and substitutions to the charge alleging conduct unbecoming an officer and gentleman in violation of Article 133, UCMJ. Appellant points out that the nature of information as "classified" or "not for release" is not an element of an Article 133, UCMJ offense. Rather, he argues that the appropriate question under Article 133, UCMJ, is whether a reasonable military officer would have no doubt that his activities constituted conduct unbecoming an officer. United States v. Hartwig, 39 M.J. 125, 130 (C.M.A. 1994); see also Parker v. Levy, 417 U.S. 733, 754 (1974) (stating that to constitute an offense under Article 133, UCMJ, the inappropriate behavior "must offend so seriously against law, justice, morality or decorum as to expose to disgrace, socially or as a man, the offender, and at the same time must be of such a nature

19

or committed under such circumstances as to bring dishonor or disrepute upon the military profession").

An accused is free to proffer an alternative plea, but he is not entitled to design his own offense.[8]  We agree with the CCA that "the military judge accurately understood the breadth and scope of Article 133, UCMJ.  He did not act in an arbitrary manner or otherwise abuse his discretion. . . . [A]ppellant's proffered plea substituting 'government information not for release' was qualitatively distinct from the charged offense." Diaz, 2009 CCA LEXIS 79, at *10-*11, 2009 WL 690614, at *4.  In this case, Appellant's amended plea changed the nature of the conduct that the Government charged as unbecoming.  The military judge considered Appellant's amended guilty plea, determined that the plea altered the gravamen of the charge, and rejected it, which on these facts was within his discretion to do.[9] Accordingly, the military judge did not abuse his discretion by rejecting Appellant's amended guilty plea.

---

[8] Of course, an accused may plead to a different offense assuming it is indeed an offense and that offense is properly before the court-martial.  See R.C.M. 201(b)(3); United States v. Wilkins, 29 M.J. 421, 424 (C.M.A. 1990).

[9] The military judge also consolidated the specification within Charge II with Specification 2 of Charge III, which ensured that Appellant would face no additional punishment for the Article 133, UCMJ, charge.

Issue III:  Exclusion of Motive Evidence

As already stated, a military judge's decision to exclude evidence is reviewed for an abuse of discretion.  Barnett, 63 M.J. at 394.  "[A] military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect."  Ayala, 43 M.J. at 298.

Article 133, UCMJ, has two elements:  (1) that the accused did or omitted to do certain acts; and (2) that, under the circumstances, these acts or omissions constituted conduct unbecoming an officer and gentleman.  MCM pt. IV, para. 59.b(2).

As we discussed above in the section on Issue I,[10] Appellant sought at trial to introduce evidence of his ethical duties as a judge advocate, among other proffers.  Appellant sought to argue that, under the circumstances, he:

> was caught between what he reasonably believed to be
> conflicting duties:  on the one hand, his duty as a
> naval officer and an officer of the court to uphold
> the Constitution and the rulings of the Supreme Court
> and the district court in the habeas cases, and on the
> other hand, his duty as a Naval officer to maintain
> the confidentiality of information that his superiors
> should have authorized for release but did not.

The military judge concluded that none of the evidence proffered by Appellant supported his argument that he was required to release classified information based on his duties

---

[10] The CCA did not distinguish the Espionage Act proffer from the Article 133, UCMJ, proffer.

as a commissioned officer, his ethical obligations as a judge

advocate, or his ethical obligations as a licensed attorney.

Appellant did not appeal the military judge's determination

that no legal justification was raised by the evidence.[11]

Appellant does argue that the subjective motivation of an

accused is relevant to a charge under Article 133, UCMJ.

Appellant claims the military judge prevented him from putting

on an adequate defense by excluding evidence of the

circumstances under which he acted, including his motive.

Appellant argues that this evidence would have supported what he

viewed as his struggle between conflicting legal duties to the

---

[11] We note as well that Appellant did not avail himself of the
Judge Advocate General's guidance on addressing differences of
legal view within the chain of command.  The Judge Advocate
General's Rules of Professional Conduct, Rule 1.13(b),
Department of the Navy as Client, states:

> If a covered [United States Government] attorney . . .
> intends to act or refuses to act in a matter related
> to the representation that is either adverse to the
> legal interests or obligations of the Department of
> the Navy or a violation of law which reasonably might
> be imputed to the Department, the covered . . .
> attorney shall proceed as is reasonably necessary in
> the best interest of the naval service.

Dep't of the Navy, Judge Advocate Instr. 5803.1C,
Professional Conduct of Attorneys Practicing Under the
Cognizance and Supervision of the Judge Advocate General,
Enclosure (1):  Rules of Professional Conduct Rule 1.13(b)
(Nov 9, 2004).  Among other things, this instruction
recommends four specific steps a covered attorney might
take, including "referring the matter to, or seeking
guidance from, higher authority in the chain of command."
Id. at Rule 1.13(b)(3).

Constitution and the rulings of the Supreme Court on the one hand, and to maintain the confidentiality of information unauthorized for release on the other. In such a context, members might have found Appellant's conduct foolish or inappropriate, but, given Appellant's motive, not necessarily unbecoming or dishonorable. He further asserts that with the benefit of such evidence he would have been able to contradict the Government's case, but instead was left to present his "motive" evidence at sentencing.

In our view, Appellant's general point is well-founded. A determination as to whether conduct charged under Article 133, UCMJ, is unbecoming of an officer and gentleman includes "taking all the circumstances into consideration." MCM pt. IV, para. 59.c(2). Such circumstances incorporate the concept of honor. Thus, in contrast to § 793(e), Appellant's view of what those circumstances entailed, and what was "honorable," is therefore relevant to his charge under Article 133, UCMJ. In short, evidence of honorable motive may inform a factfinder's judgment as to whether conduct is unbecoming an officer. This is possible even where the conduct itself amounts to a delict; this might be the case, for example, where an accused drives under the influence of alcohol in order to rush a gravely injured person to an emergency room.

We therefore conclude that the military judge abused his discretion when he prohibited Appellant from presenting motive evidence on the Article 133, UCMJ, charge, without first evaluating Appellant's specific proffers for factual and legal relevance under M.R.E. 401, M.R.E. 402, and M.R.E. 403 in the context of the Article 133, UCMJ, charge.

## Whether the Prohibition of Motive Evidence was Harmless Error

Nonconstitutional errors are reviewed for prejudice under Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2006). The burden is on the Government to demonstrate that the error did not have a substantial influence on the findings. United States v. McCollum, 58 M.J. 323, 342 (C.A.A.F. 2003).[12] When evaluating claims of prejudice from an evidentiary ruling, this Court weighs four factors: "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." United States v. Kerr, 51 M.J. 401, 405 (C.A.A.F. 1999) (citation omitted). Balancing the factors, we conclude that the military judge's error did not have a substantial influence on the findings.

---

[12] In Kotteakos v. United States, 328 U.S. 750, 765 (1946), the Supreme Court stated that "[t]he inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather . . . whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."

On the one hand, the military judge's decision to exclude evidence of Appellant's state of mind certainly changed the way Appellant defended himself at trial.  As we have stated, Article 133, UCMJ, specifically requires "taking all the circumstances into consideration."  Appellant's state of mind was relevant to the circumstances under which he acted.  At trial, Appellant was barred from showing that he acted in a manner he believed was compelled by the Supreme Court's decision in Rasul, and thus, in his view, was honorable.

On the other hand, the better argument is that the military judge's error did not have a substantial influence on the trial, and that Appellant could not have avoided a conviction under Article 133, UCMJ, even if some or all of Appellant's proffered evidence had been admitted.  Appellant copied classified material and sent it to a person not authorized to receive it.  The clandestine method of disclosure -- by sending it through the postal system cut up in a Valentine's Day card -- suggests that Appellant knew at the time his actions warranted concealment.  His failure to adhere to presidential directives and departmental regulations, including those regarding classified information and for addressing differences of legal views within the Department, demonstrates that Appellant was not legally permitted to disregard the classified nature of the protected information.  Moreover, had Appellant been allowed to

present evidence of his "duty" owed as a result of the Rasul decision, the Government would have responded by noting Appellant's obligations to adhere to naval and presidential directives regarding the handling of classified information, which weighed in the opposite direction. The absence in Rasul of any indication the Supreme Court intended its ruling to supersede in some manner counsel's other legal and ethical obligations also weighs against Appellant.

Finally, we note that the military judge merged the two charges for sentencing purposes.

Under these circumstances we conclude that any error on the part of the military judge to assess and ultimately admit Appellant's proffer of motive evidence on the Article 133, UCMJ, charge was harmless.

## CONCLUSION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.