# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40507**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Jorge A. ARIZPE**
**Major (O-4), U.S. Air Force, *Appellant***

———————————

Appeal from the United States Air Force Trial Judiciary[1]

Decided 19 March 2025

———————————

*Military Judge*: Lance R. Smith.

*Sentence*: Sentence adjudged on 13 January 2023 by GCM convened at Royal Air Force Lakenheath, United Kingdom. Sentence entered by military judge on 14 February 2023: Confinement for 35 days, forfeiture of $1,200.00 pay per month for 2 months, and a reprimand.

*For Appellant*: Major Heather M. Bruha, USAF.

*For Appellee*: Lieutenant Colonel J. Pete Ferrell, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Major Brittany M. Speirs, USAF; Captain Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before ANNEXSTAD, GRUEN, and MASON, *Appellate Military Judges*.

Senior Judge ANNEXSTAD delivered the opinion of the court, in which Judge GRUEN and Judge MASON joined.

———————————

---

[1] Appellant appeals his conviction under Article 66(b)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(b)(1)(A), *Manual for Courts-Martial, United States* (2024 ed.).

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

---

ANNEXSTAD, Senior Judge:

A general court-martial consisting of officer members convicted Appellant, contrary to his pleas, of one specification of abusive sexual contact in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920, and one specification of conduct unbecoming an officer and a gentleman in violation of Article 133, UCMJ, 10 U.S.C. § 933.[2,3] The military judge sentenced Appellant to confinement for 35 days, forfeiture of $1,200.00 pay per month for two months, and a reprimand. The convening authority took no action on the findings or the sentence.

Appellant raised four issues on appeal which we have rephrased: (1) whether Appellant's convictions are legally and factually sufficient; (2) whether the post-trial processing of Appellant's case was improperly completed when the staff judge advocate found 18 U.S.C. § 922 applied to Appellant's conviction of a nonviolent offense; (3) whether Appellant was deprived of his right to a unanimous verdict; and (4) whether unlawful command influence tainted the preferral process in Appellant's case.[4] We also consider another issue not raised by Appellant: (5) whether Appellant was subjected to unreasonable post-trial delay.

We have carefully considered issue (2) and find it does not warrant discussion or relief. *See United States v. Vanzant*, 84 M.J. 671, 681 (A.F. Ct. Crim. App. 2024) (holding the 18 U.S.C. § 922 firearm prohibition notation included in the staff judge advocate's indorsement to the entry of judgment is beyond a Court of Criminal Appeals' statutory authority to review), *rev. granted*, __ M.J. __, No. 24-0182, 2024 CAAF LEXIS 640 (C.A.A.F. 17 Oct. 2024).

As to issue (3) Appellant is not entitled to relief. *See United States v. Anderson,* 83 M.J. 291, 302 (C.A.A.F. 2023) (holding that a military accused does

---

[2] All references to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.). All other references to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2024 ed.).

[3] Appellant was acquitted of one specification of failure to obey a lawful order in violation of Article 92, UCMJ, 10 U.S.C. § 892.

[4] Issues (3) and (4) were personally raised by Appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

not have a right to a unanimous verdict under the Sixth Amendment,[5] the Fifth Amendment's due process clause, or the Fifth Amendment's component of equal protection[6]), *cert. denied*, 144 S. Ct. 1003 (2024).

We have also carefully considered issue (4) and find it does not require discussion or relief. *See United States v. Guinn*, 81 M.J. 195, 204 (C.A.A.F. 2021) (citing *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987)).

Therefore, we only address issue (1), and issue (5) as raised by the court, *infra*. Finding no error that materially prejudiced Appellant's substantial rights, we affirm the findings and sentence.

## I. BACKGROUND

### A. Abusive Sexual Contact

On Saturday, 24 July 2021, Appellant invited some of his coworkers from the medical group to his house for a casual barbeque. The attendees included LW, Captain (Capt) BA, and Major (Maj) SC. All attendees were active duty servicemembers. LW had drunk only two glasses of wine, and noticed Appellant, who also had been drinking wine, was slurring his words. Around 2100, Maj SC left the barbeque due to fatigue from the workweek. LW testified at trial that not long after Maj SC left, Appellant began making crude sexually charged jokes she felt were directed towards her as the only female present, and his actions and comments made her feel uncomfortable. Capt BA also witnessed Appellant's conduct and testified that Appellant was making him feel uncomfortable as well. He stated that after making eye contact with LW, they decided it was time to leave Appellant's residence.

Before they left, LW and Capt BA helped Appellant carry the dinner dishes back into the kitchen. As Capt BA was washing his hands at the kitchen sink with his back turned away from Appellant and LW, Appellant initiated a hug with LW. While Appellant was hugging her, he "grabbed [her] right butt cheek" with his "left hand." LW stated that she immediately "pushed Appellant off with both hands" and told him, "[T]hat's enough." She then stated Appellant laughed and said, "You know I just had to try," and came in for a second hug. Capt BA testified that he did not see the initial hug, but overheard Appellant's response which was consistent with LW's testimony. LW then described that she froze during the second hug and that Appellant "nuzzled" her neck. Capt BA witnessed the second hug and could see that LW was uncomfortable with Appellant's behavior.

---

[5] U.S. CONST. amend. VI.

[6] U.S. CONST. amend. V.

On the way home, LW told Capt BA that she did not like the version of Appellant when he was "drunk," and that Appellant had grabbed her buttocks during the first hug. The following Monday, LW made a restricted sexual assault report, and subsequently changed it to an unrestricted sexual assault report. LW testified that Appellant's conduct made her feel like she was "a piece of meat" and worthless.

These facts formed the basis of the one specification of abusive sexual contact in violation of Article 120, UCMJ, of which a panel of officer members convicted Appellant.

## B. Conduct Unbecoming an Officer and a Gentleman

In January 2021, SM, a dependent spouse of an active duty servicemember, began working as a licensed practical nurse at the base medical facility. She met Appellant in July 2021 when he was assigned as her flight commander. In August 2021, SM was the only technician assigned to the flight and worked closely with Appellant on a daily basis. During work, they engaged in both personal and professional conversations. SM testified that at the time she viewed Appellant as a "father figure." This all changed in September 2021.

On Monday, 13 September 2021, shortly after arriving to work, Appellant and SM had a brief discussion about what they did over the weekend before beginning their patient rounds. Approximately two hours later, Appellant approached SM and said, "I love you." SM stated that she took the comment to mean that he wanted something from her. SM testified that Appellant then said, "[SM], I'm going to tell you something that may make you look at me differently or cringe, but you are the type of girl I usually go after, but I know there is this line here and I know not to cross it." SM stated that while Appellant was making these comments, she did not make eye contact with him and just stared at her computer. Seeing her body language, Appellant told her, "See, I knew I shouldn't have said anything because now you won't even look at me." Subsequently, Appellant laughed and walked away.

SM testified that Appellant's comments confused her and made her "shut down." She testified that she immediately reported his behavior, including the comments, to three coworkers and her husband. One of the individuals she told about the incident was her previous flight commander, Lieutenant Colonel SA, who testified that SM was upset and "very uncomfortable" when telling her about Appellant's professed feelings. At trial, SM explained that Appellant's comments bothered her because he was her supervisor and someone that she was required to work for and converse with every day. Later that same day, Appellant tried to reengage SM in a conversation. SM tried to keep her interaction with Appellant short, and Appellant, after recognizing that she still would not make eye contact with him, told her, "See you are still not looking

at me." SM was transferred to a different clinic so she would not have to work with Appellant.

These facts formed the basis of the one specification of conduct unbecoming an officer and a gentleman, of which a panel of officer members convicted Appellant.

## II. DISCUSSION

## A. Legal and Factual Sufficiency

In his appeal, Appellant challenges the legal and factual sufficiency of both convictions. As to the abusive sexual contact offense, Appellant argues that he had a reasonable mistake of fact as to consent, and that the Government failed to prove the required intent element—that the contact was to gratify his sexual desire. As to the conduct unbecoming an officer and a gentleman offense, Appellant generally argues that his actions did not rise to the level of conduct unbecoming an officer and a gentleman. We disagree with both arguments and find his convictions legally and factually sufficient.

### 1. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citing *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993)).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (citation omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (citation omitted). "This deferential standard impinges upon the factfinder's discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *United States v. Mendoza*, ___ M.J.___, No. 23-0210, 2024 CAAF LEXIS 590, at *9 (C.A.A.F. 7 Oct. 2024) (internal quotation marks and citation omitted).

The National Defense Authorization Act for Fiscal Year 2021 significantly changed how service Courts of Criminal Appeals (CCAs) conduct factual sufficiency reviews. Pub. L. No. 116-283, § 542(b)(1)(B), (c), 134 Stat. 3388, 3611–

12 (1 Jan. 2021). "Congress undoubtedly altered the factual sufficiency standard in amending the statute, making it more difficult for a [CCA] to overturn a conviction for factual sufficiency." *United States v. Harvey*, 83 M.J. 685, 691 (N.M. Ct. Crim. App. 2023), *set aside on other grounds*, ___ M.J.___, No. 23-0239, 2024 CAAF LEXIS 502 (C.A.A.F. 6 Sep. 2024). Previously, the test for factual sufficiency required the court, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, to be convinced of the appellant's guilt beyond a reasonable doubt before it could affirm a finding. *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). "In conducting this unique appellate role, we [took] 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (second alteration in original) (quoting *Washington*, 57 M.J. at 399).

The current version of Article 66(d)(1)(B), UCMJ, FACTUAL SUFFICIENCY REVIEW, states:

> (i) In an appeal of a finding of guilty under subsection (b), the Court may consider whether the finding is correct in fact upon a request of the accused if the accused makes a specific showing of a deficiency of proof.
>
> (ii) After an accused has made a showing, the Court may weigh the evidence and determine controverted questions of fact subject to—
>
> (I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and
>
> (II) appropriate deference to findings of fact entered into the record by the military judge.
>
> (iii) If, as a result of the review conducted under clause (ii), *the Court is clearly convinced that the finding of guilty was against the weight of the evidence*, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

10 U.S.C. § 866(d)(1)(B) (emphasis added).

"[T]he requirement of 'appropriate deference' when a CCA 'weigh[s] the evidence and determine[s] controverted questions of fact' . . . depend[s] on the nature of the evidence at issue." *United States v. Harvey*, ___ M.J.___, No. 23-0239, 2024 CAAF LEXIS 502, at *8 (C.A.A.F. 6 Sep. 2024) (second and third alterations in original). It is within this court's discretion to determine what level of deference is appropriate. *Id.*

"[T]he quantum of proof necessary to sustain a finding of guilty during a factual sufficiency review is proof beyond a reasonable doubt, the same as the quantum of proof necessary to find an accused guilty at trial." *Id.* at \*10 (internal quotation marks omitted).

For this court "to be 'clearly convinced that the finding of guilty was against the weight of the evidence,' two requirements must be met." *Id.* at \*12. First, we must decide that evidence, as we weighed it, "does not prove that the appellant is guilty beyond a reasonable doubt." *Id.* Second, we "must be clearly convinced of the correctness of this decision." *Id.*

### a. Abusive Sexual Contact

To convict Appellant of abusive sexual contact without consent, the Government was required to prove the following two elements beyond a reasonable doubt: (1) that Appellant committed sexual contact upon LW, and (2) that Appellant did so without LW's consent. *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 60.b.(4)(d).

"Sexual contact" includes "touching or causing another person to touch, either directly or through the clothing, the . . . buttocks of any person, with an intent to . . . gratify the sexual desire of any person." *MCM*, pt. IV, ¶ 60.a.(g)(2).

"'[C]onsent' means a freely given agreement to the conduct at issue by a competent person. An expression of lack of consent through words or conduct means there is no consent." *MCM*, pt. IV, ¶ 60.a.(g)(7)(A). "All the surrounding circumstances are to be considered in determining whether a person gave consent." *MCM*, pt. IV, ¶ 60.a.(g)(7)(C).

"[I]t is a defense to an offense that the accused held, as a result of ignorance or mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them, the accused would not be guilty of the offense." Rule for Courts-Martial (R.C.M.) 916(j)(1). If the mistake goes to an element requiring general intent, it "must have existed in the mind of the accused and must have been reasonable under all the circumstances." *Id.* "Therefore, an honest and reasonable mistake that the victim consented to the charged sexual contact is an affirmative defense to abusive sexual contact as it is to other sexual offenses." *Rodela*, 82 M.J. at 526 (citations omitted). "Once raised, the Government bears the burden to prove beyond a reasonable doubt that the defense does not exist." *Id.* (citing R.C.M. 916(b)(1)) (additional citation omitted).

### b. Conduct Unbecoming an Officer and a Gentleman

To convict Appellant as charged of conduct unbecoming an officer and a gentleman, the Government was required to prove the following two elements beyond a reasonable doubt: (1) that Appellant did a certain act, to wit: become

unduly familiar with SM—a subordinate and married woman—by making unwanted and inappropriate comments to her in the workplace, including communicating the words "I love you," and "You are the type of girl I usually go after," or words to that effect; and (2) that, under the circumstances, the act constituted conduct unbecoming an officer and gentleman. *MCM,* pt. IV, ¶ 90.b.

Conduct in violation of Article 133, UCMJ, is

> action or behavior in an official capacity which, in dishonoring or disgracing the person as an officer, seriously compromises the officer's character as a gentleman, or action or behavior in an unofficial or private capacity which, in dishonoring or disgracing the officer personally, seriously compromises the person's standing as an officer.

*MCM,* pt. IV ¶ 90.c.(2).

> An officer's conduct need not violate other provisions of the UCMJ or even be otherwise criminal to violate Article 133, UCMJ. The gravamen of the offense is that the officer's conduct disgraces him personally . . . . Clearly, then, the appropriate standard for assessing criminality under Article 133 is whether the conduct or act charged is dishonorable and compromising as hereinbefore spelled out—this notwithstanding whether or not the act otherwise amounts to a crime.

*United States v. Lofton*, 69 M.J. 386, 388–89 (C.A.A.F. 2011) (quoting *United States v. Schweitzer*, 68 M.J. 133, 137 (C.A.A.F. 2009)).

The offense of conduct unbecoming an officer and a gentleman includes actions which are "indicated by acts of dishonesty, unfair dealing, indecency, indecorum, lawlessness, injustice, or cruelty." *MCM*, pt. IV, ¶ 90.c.(2).

> Though it need not amount to a crime, [the conduct] must offend so seriously against law, justice, morality or decorum as to expose to disgrace, socially or as a man, the offender, and at the same time must be of such a nature or committed under such circumstances as to bring dishonor or disrepute upon the military profession which he represents.
>
> . . . If the act, though ungentlemanlike, be of a trifling character, involving no material prejudice to individual rights, or offence against public morals or decorum, it will not in general properly be viewed as so affecting the reputation of the officer or the credit of the service as to be made the occasion of a prosecution under [Article 133, UCMJ].

*United States v. Brown*, 55 M.J. 375, 382 (C.A.A.F. 2001) (ellipsis in original) (quoting William Winthrop, MILITARY LAW AND PRECEDENTS 711–12 (2d ed. 1920 reprint)). "The conduct must impugn the honor or integrity of the officer or subject him to social disgrace. . . . Article 133[, UCMJ,] is reserved for serious delicts of officers and should not be demeaned by using it to charge minor derelictions." *United States v. Murchison*, No. ACM 32412, 1997 CCA LEXIS 442, at *5 (A.F. Ct. Crim. App. 20 Aug. 1997) (unpub. op.) (citations omitted). "'Unbecoming' . . . is understood to mean not merely inappropriate or unsuitable, . . . but *morally* unbefitting and unworthy." *Id.* at *5–6 (ellipses in original) (citations omitted); *see also United States v. Rogers*, 54 M.J. 244, 255–56 (C.A.A.F. 2000) (holding "conduct morally unfitting and unworthy, rather than merely inappropriate or unsuitable, misbehavior which is more than opposed to good taste or propriety").

Conduct unbecoming an officer and a gentleman under Article 133, UCMJ, is a general intent crime. "[G]eneral intent merely requires [t]he intent to perform [the actus reus] *even though the actor does not desire the consequences that result*. . . . [A] general intent mens rea would require only that [the a]ppellant *intended* to commit the conduct alleged in each specification . . . ." *United States v. Voorhees*, 79 M.J. 5, 16 (C.A.A.F. 2019) (first, second, and third alterations in original) (citations omitted). The subjective motivation of an accused is relevant to a charge under Article 133, UCMJ. *United States v. Diaz*, 69 M.J. 127, 136 (C.A.A.F. 2010).

"The test for a violation of Article 133, UCMJ, is 'whether the conduct has fallen below the standards established for officers.'" *Id.* at 135 (quoting *United States v. Conliffe*, 67 M.J. 127, 132 (C.A.A.F. 2009) (additional citation omitted)). A determination of whether the conduct charged is unbecoming of an officer and a gentleman includes "taking all the circumstances into consideration." *Id.* at 136 (citation omitted). "Such circumstances incorporate the concept of honor." *Id.* "[E]vidence of honorable motive may inform a factfinder's judgment as to whether conduct is unbecoming an officer." *Id.*

Before an officer can be convicted of an offense under Article 133, UCMJ, "[d]ue process requires 'fair notice' that an act is forbidden and subject to criminal sanction." *United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003) (citing *United States v. Bivins*, 49 M.J. 328, 330 (C.A.A.F. 1998)); *see also United States v. Anderson*, 60 M.J. 548, 554 (A.F. Ct. Crim. App. 2004) ("[T]he issue is whether a reasonable military member would know that his or her conduct was service-discrediting (and, therefore, punishable under the Article)."). The question is whether a "reasonable military officer would have no doubt that the activities charged . . . constituted conduct unbecoming an officer." *United States v. Frazier*, 34 M.J. 194, 198 (C.M.A. 1994) (footnote omitted) (citing *Parker v. Levy*, 417 U.S. 733, 757 (1974)).

### 2. Analysis

Regarding the abusive sexual contact offense, we find the Government presented convincing evidence of Appellant's guilt beyond a reasonable doubt. LW's testimony specifically described how Appellant initiated a hug and "used his left hand and grabbed [her] right butt cheek" without her consent. LW then described how she immediately pushed him away, and that Appellant told her "[he] just had to try." On appeal, Appellant argues that if the "butt touch happened" that it was only done to assess LW's interest in Appellant and was not done to gratify his sexual desires. We find that a rational trier of fact could conclude the fact that Appellant's decision to initiate a hug and to grab a part of LW's body—her buttocks, which is considered a private area—to gauge her romantic interest is in itself evidence that could be used to establish that he touched LW's buttocks to gratify his sexual desire. The factfinders, *i.e.*, the officer members, in this case also had the benefit of Capt BA's testimony concerning Appellant's behavior before the sexual contact occurred and his impressions of the effect that Appellant's behavior had on LW. Here, Capt BA's testimony on both points is consistent with LW's testimony. Furthermore, we find nothing in the evidence demonstrated that Appellant would have had a reasonable belief that LW consented to being inappropriately touched by him. Moreover, we find it unreasonable for Appellant to think he had consent to grab the buttocks of another person who had expressed no romantic interest in him.

As to the conduct unbecoming an officer and a gentleman offense, we find the Government again provided convincing evidence of Appellant's guilt beyond a reasonable doubt. Here, the Government provided evidence through the direct testimony of SM, who was married, worked directly for Appellant, and to whom Appellant made unwanted and inappropriate romantic comments at work. She testified about how his behavior and comments made her feel uncomfortable and that she tried not to look at him both during and after he made the unsolicited and unwanted comments. The Government's evidence also included Appellant's own words to demonstrate that he knew his conduct fell below moral attributes required of both an officer and a gentleman. Appellant argues on appeal that this interaction did not rise to the level of severity necessary to prove conduct unbecoming an officer and a gentleman. We disagree. Here, the evidence demonstrated that Appellant told his married subordinate, "I love you" and "that [she] was the type of girl [he] usually goes after," while they were at work. He further acknowledged to SM that he knew that she might find his words "cringy" and also that he "kn[e]w there is this line here and [he] kn[e]w not to cross it," which indicates he understood that his actions and comments were unwanted and inappropriate. We find that based on the evidence presented, a rational trier of fact could find Appellant's actions, in an official capacity, were both dishonorable and disgraceful to Appellant as an

officer, and that his actions seriously compromised Appellant's character as a gentleman.

In conclusion, viewing the evidence in the light most favorable to the Prosecution, we find that a rational trier of fact could have found the essential elements of both offenses beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297−98. As to the factual sufficiency of these offenses, we assume without deciding that Appellant properly made a request for a factual sufficiency review by asserting a specific showing of a deficiency of proof as required under Article 66(d)(1)(B)(i), UCMJ, 10 U.S.C. § 866(d)(1)(B)(i). However, having given appropriate deference to the fact that the court members saw and heard the witnesses and other evidence, the court is not clearly convinced that Appellant's convictions for both offenses were against the weight of the evidence. Thus, the findings are factually sufficient as well.

## B. Post-Trial Delay

We consider *sua sponte* whether Appellant is entitled to relief because this court did not render a decision within 18 months of docketing.

### 1. Additional Background

On 23 December 2022, Congress amended Articles 66 and 69, UCMJ, 10 U.S.C. §§ 866, 869.[7] As amended, Article 66(b)(1)(A), UCMJ, 10 U.S.C. § 866(b)(1)(A), expanded the jurisdiction of the service CCAs to any judgment of a special or general court-martial, irrespective of sentence, that included a finding of guilty.

Appellant was sentenced on 13 January 2023. Appellant's sentence did not meet the jurisdictional requirements for automatic appeal to this court. Article 66(b)(3), UCMJ, 10 U.S.C. § 866(b)(3). On 12 May 2023, Appellant received a notice from Headquarters Third Air Force informing him of his right to appeal his conviction pursuant to Article 66(b)(1)(A), UCMJ. On 14 July 2023, Appellant filed with this court a timely notice of direct appeal pursuant to Article 66(b)(1)(A), UCMJ, and this court docketed his case on 14 August 2023. After the certified verbatim transcript was delivered to this court, Appellant moved for 13 enlargements of time, almost all of which were opposed by the Government. On 14 January 2025, Appellant filed his assignments of error brief with the court. On 12 February 2025, the Government filed their answer brief. Appellant then filed a reply brief on 19 February 2025.

At no time has Appellant made a demand for speedy appellate review, nor has he claimed prejudice regarding the post-trial processing of his appeal.

---

[7] National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, § 544, 136 Stat. 2395, 2582–84 (23 Dec. 2022).

### 2. Law

We review the question of whether an appellant's due process rights are violated because of post-trial delay de novo. *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020).

In *United States v. Moreno,* the United States Court of Appeals for the Armed Forces (CAAF) identified thresholds for facially unreasonable delay during three particular segments of the post-trial and appellate process. 63 M.J. 129, 136 (C.A.A.F. 2006). Specifically, our superior court established a presumption of facially unreasonable delay where: (1) the convening authority did not take action within 120 days of the completion of trial, (2) the record was not docketed with the CCA within 30 days of the convening authority's action, or (3) the CCA did not render a decision within 18 months of docketing. *Id.* at 142.

Where there is a facially unreasonable delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *Moreno*, 63 M.J. at 135 (citations omitted). The CAAF identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) "particularized" anxiety and concern "that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *Id.* at 138–40 (citations omitted).

Where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

"In the absence of a due process violation, this court considers whether relief for excessive post-trial delay is warranted consistent with this court's authority under Article 66(d), UCMJ, 10 U.S.C. § 866(d)." *Livak*, 80 M.J. at 632; *see also United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *United States v. Gay,* 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016).

### 3. Analysis

We consider whether Appellant is entitled to relief because a decision on his appeal was not rendered by this court within 18 months of his case being docketed with this court.

We begin our analysis with the assumption that while the post-trial procedures of Appellant's appeal are different than the appeal procedures in place at the time *Moreno* and its progeny were decided, that the right to speedy appellate review continues under these new procedures. We also determine that the 18-month *Moreno* standard for facially unreasonable delay from docketing with this court to appellate decision still applies to determine if an appellant's due process right to speedy appellate review has been violated. Therefore, since a decision by this court on Appellant's case was not rendered within 18 months of 14 August 2023, a facially unreasonable post-trial delay has been established in Appellant's case.

Finding a facially unreasonable post-trial delay, we now assess whether a due process violation occurred. After considering the four *Barker* factors we conclude that no due process violation occurred and thus no relief is warranted. We do not find the delay in this case so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362. Finally, recognizing our authority under Article 66(d), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation. *See Tardif*, 57 M.J. at 225. After considering the factors enumerated in *Gay*, 74 M.J. at 744, we conclude it is not.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court