UNITED STATES, Appellee,

v.

**Rufus SMITH, A Person in Custody of the Armed Forces, Appellant.**

No. 67,205.
ACM 28173.

U.S. Court of Military Appeals.

Argued May 5, 1992.

Decided Sept. 14, 1992.

For Appellant: *Captain Ursula P. Moul* (argued); *Colonel Jeffrey R. Owens* (on brief).

For Appellee: *Captain James C. Sinwell* (argued); *Lieutenant Colonel Brenda J. Hollis* (on brief).

*Opinion of the Court*

GIERKE, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, by exceptions and substitutions, of stealing military property and obstruction of justice, in violation of Articles 121 and 134, Uniform Code of Military Justice, 10 USC §§ 921 and 934, respectively. The approved sentence provides for confinement for 3 years. The Court of Military Review affirmed the findings and sentence. 33 MJ 527 (1991).

We granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED WHEN HE FORCED TRIAL DEFENSE COUNSEL, CAPTAIN PETERSON, TO BECOME A WITNESS AGAINST APPELLANT, THEREBY SEVERING THE ATTORNEY–CLIENT RELATIONSHIP.

We hold that the military judge did not err when he forced Captain Jane Peterson to testify and that he properly granted her request to withdraw.

Appellant previously had been convicted by general court-martial on February 26, 1988, of offenses unrelated to this appeal. His sentence included a bad-conduct discharge and a term of confinement. He was confined successively at RAF Lakenheath, England; Mannheim, Germany; and Fort Lewis, Washington. His punitive discharge was executed on December 27, 1988.

On January 30, 1989, he was transferred to the confinement facility at Lowry Air Force Base, Colorado. Upon his arrival at Lowry, all of his personal property was inventoried. Appellant was assigned to the Enhanced Minimum Custody Program (EMCP), which entitled him to live in a dormitory instead of a cell block, and to leave the dormitory and his place of duty unescorted. He was assigned to work in a supply warehouse containing military clothing and equipment, including items used by Air Force Security Police. Appellant had free access to the entire warehouse.

After a number of apparently new items of military property, including items used by Air Force Security Police, were discovered in appellant's living area in the EMCP dormitory, he was charged with stealing military property. The charges were referred to a general court-martial, which was scheduled to convene on July 21, 1989.

On the morning of that trial, Captain Peterson, the defense counsel, responded to a prosecution discovery request by giving Captain Howell, the trial counsel, an Air Force Form 807 purporting to be an inventory of appellant's possessions when he was confined at RAF Lakenheath. *See* RCM 701(b)(3), Manual for Courts–Martial, United States, 1984 (specifies when defense required to disclose documents and tangible objects intended to be introduced as evidence). Captain Peterson intended to introduce the document at trial. The property listed was similar to many of the items appellant was accused of stealing. Captain Howell testified that he "asked her specifically where and when she'd gotten the document and she told [him] that her client had given it to her." Captain Peterson told him that "it had been prepared by Sergeant Patterson, according to her client, when he was checking it I believe at the Lakenheath facility."

Suspecting that the document was false, trial counsel requested and obtained a continuance. Sergeant Patterson denied preparing the form. Appellant was then charged with obstructing justice, in viola-

tion of Article 134, by preparing and delivering the false Air Force Form 807 to Captain Peterson, intending that it be used as evidence in his court-martial. The additional charge of obstructing justice was joined with the original larceny charge.

When the court-martial resumed on September 7, 1989, appellant was represented by Captain Riegler as individual military counsel, in addition to Captain Peterson. Captain Howell had been replaced as trial counsel. The defense made a motion *in limine* to prevent the prosecution from calling Captain Peterson as a witness, arguing that requiring her to testify about the false Air Force Form 807 would breach the lawyer-client privilege under Mil. R.Evid. 502, Manual, *supra*, and violate the ethical obligations imposed on a member of her state bar. After a hearing in which Sergeant Patterson denied preparing the Air Force Form 807, the military judge denied the motion *in limine*.

Captain Peterson then requested permission to withdraw as detailed defense counsel. She based her request on her belief that her state bar rules* required her to withdraw as counsel upon learning that she would be called as a witness and her belief that she could not zealously represent her client while providing material evidence against him. Captain Riegler, individual defense counsel, concurred in Captain Peterson's request, stating that Captain Peterson's continued representation of appellant "would put us in the awkward position ... of arguing that Captain Peterson was not a credible witness." The military judge granted her request, finding that good cause had been shown to terminate the attorney-client relationship. RCM 506(c).

Appellant now contends that the Government improperly severed the lawyer-client relationship by compelling his detailed defense counsel to testify against him. On the other hand, the Government contends that appellant himself severed the lawyer-client relationship by using his lawyer in an attempt to obstruct justice.

In order to resolve the granted issue, we must answer three questions: First, was the military judge correct when he ruled that Captain Peterson could be compelled to testify about the source and authenticity of the false Air Force Form 807 without violating Mil.R.Evid. 502 (the lawyer-client privilege)? Second, was Captain Peterson's testimony sufficiently relevant and necessary to justify compelling her to testify? Third, did the military judge rule correctly when he granted Captain Peterson's request to withdraw as detailed defense counsel? We answer all three questions in the affirmative and uphold the decision of the Court of Military Review.

## I. Lawyer–Client Privilege

Concerning the lawyer-client privilege, Mil.R.Evid. 502(a) provides:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client ... between the client ... and the lawyer.

The lawyer-client privilege does not apply to "communications ... which further a crime or fraud." *United States v. Laurins*, 857 F.2d 529, 540 (9th Cir.1988), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989); *see* Mil.R.Evid. 502(d)(1). This exception applies even when the lawyer is unaware of the client's "illegal purpose." *United States v. Laurins*, *supra* at 540. Likewise, a lawyer may be compelled to disclose a client's con-

---

* The Minnesota rule relied on by Captain Peterson is identical to Rule 3.7(a), ABA Model Rules of Professional Conduct, which provides:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
> (1) the testimony relates to an uncontested issue;

> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

We need not decide in this case whether state bar ethical standards override the Rules for Courts–Martial. *See* U.S. Const. art. VI (the Supremacy Clause).

fidence in connection with a projected crime. *United States v. Marrelli*, 4 USCMA 276, 281–82, 15 CMR 276, 281–82 (1954). *See Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933) ("The privilege takes flight if the relation is abused.").

The privilege protects only "confidential communications." If the communication is "intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication," it is not privileged. Mil. R.Evid. 502(b)(4); *United States v. Winchester*, 12 USCMA 74, 78, 30 CMR 74, 78 (1961); *United States v. Inigo*, 925 F.2d 641, 657 (3d Cir.1991).

█ Both exceptions apply to this case. Appellant gave the false document to Captain Peterson and represented it as genuine in an attempt to obstruct justice. Furthermore, he gave it to her intending that the document and his description of its origin be disclosed to trial counsel and presented as evidence at his court-martial. Accordingly, we hold that the military judge did not violate the lawyer-client privilege by compelling Captain Peterson to testify.

## II. Relevance and Necessity

█ Appellant next contends that it was not necessary for the military judge to compel Captain Peterson to testify, because there were reasonable alternatives to calling her as a prosecution witness. This Court is "extremely protective of the relationship between an accused and his detailed counsel." *United States v. Hanson*, 24 MJ 377, 379 (CMA 1987). When, as in this case, compelling the lawyer to testify will cause severance of the lawyer-client relationship, the Government must show "that there is no other reasonably available source for" the evidence. *In re Grand Jury Subpoena (Legal Services Center)*, 615 F.Supp. 958, 964 (D.C.Mass.1985). *See In re Grand Jury Matters*, 751 F.2d 13, 19–20 (1st Cir.1984) (affirming district

court's order to show need for information); *In re Special Grand Jury No. 81–1 (Leon D. Harvey)*, 676 F.2d 1005, 1010 (4th Cir.1982), *vacated on other grounds*, 697 F.2d 112 (1982) (Government must make prima facie showing of relevance and need); *but see In re Grand Jury Proceedings 88–9 (MIA)*, 899 F.2d 1039, 1044 (11th Cir.1990) (Government need not show relevance and need). The requirement for showing necessity must be interpreted consistently with this Court's insistence on "a truly extraordinary circumstance rendering virtually impossible the continuation of the established relationship" to justify terminating the lawyer-client relationship without the client's consent. *United States v. Iverson*, 5 MJ 440, 442–43 (CMA 1978).

█ In this case Captain Peterson's testimony clearly was relevant. It established the source of the false document, proved that appellant represented the document as genuine, and proved that appellant intended the document to be used as evidence in his court-martial.

█ The question of necessity is more complex. Because of the seriousness of the offense, foregoing prosecution was not a reasonable alternative. *See United States v. Laurins*, 857 F.2d at 540 (obstruction of justice sufficiently serious to justify compelling lawyer to testify against client). Appellant argues that Captain Peterson's testimony was not necessary because the same facts could have been established through the testimony of Captain Howell. He further argues that Captain Peterson's admissions to trial counsel were attributable to appellant and were not hearsay because they were "a statement by the party's agent ... concerning a matter within the scope of the agency...." Mil.R.Evid. 801(d)(2)(D). *See United States v. Babat*, 18 MJ 316, 324 (CMA 1984) (investigator's testimony about lawyer's statements when he turned over money given to him by client not hearsay). *See also* Mil.R.Evid. 801(d)(2)(C) (statement by authorized person); *United States v. Parsons*, 646 F.2d 1275 (8th Cir.1981) (bankruptcy petition

prepared by lawyer used as admission against client).

Assuming *arguendo* that appellant's argument is correct and that there was an alternative to calling Captain Peterson as a prosecution witness, the alternative would not have solved the problem in this case. Appellant denied committing the offense. The source of the information upon which the prosecution relied was Captain Peterson. No matter how the information was presented, whether directly through Captain Peterson, indirectly through Captain Howell, by stipulation, or any other means, Captain Peterson still would be the source of the evidence. The defense still would be forced to attack her credibility, deny that she made the statement to Captain Howell, or concede guilt. Attacking Captain Peterson's veracity, but leaving her on the defense team, would have created the awkward situation cited by individual counsel when he concurred in Captain Peterson's request to be excused. Attacking the accuracy of Captain Howell's testimony undoubtedly would have resulted in Captain Peterson being called as a government rebuttal witness. There were no "reasonable" alternatives to Captain Peterson's testimony, because none of the alternatives would have solved the problem. Accordingly, we hold that the military judge did not err by compelling Captain Peterson to testify.

III. Request to Withdraw as Counsel

We turn next to Captain Peterson's request to withdraw as counsel. "Defense counsel may be excused only with the express consent of the accused, or by the military judge upon application for withdrawal by the defense counsel for good cause shown." RCM 506(c); *United States v. Hanson*, 24 MJ at 379. Appellant did not consent in this case; indeed, he was not even asked for his consent.

■ While a defense counsel should "consider" withdrawing from a case if called as a witness for either side, testimony as a witness does not in all cases constitute "good cause" to sever the lawyer-client relationship over an accused's objection. *United States v. Baca*, 27 MJ 110, 118–19 (CMA 1988); *United States v. Babat*, 18 MJ at 325. Testimony on an uncontested matter does not necessarily justify severing the relationship; nor does testimony regarding a collateral matter, as opposed to the question of guilt or innocence. *United States v. Baca*, 27 MJ at 116 and 120; *see* Rule 3.7(a)(1), ABA Model Rules of Professional Conduct (1983). "It is when the lawyer's own credibility must be put in issue as a witness before the finders of fact that we run afoul of the rule." 27 MJ at 120 (Cox, J., concurring).

■ In this case, appellant duped Captain Peterson into aiding him in an attempt to deceive the court-martial. Captain Peterson's testimony was not on an uncontested or collateral issue; it went to the heart of the prosecution. Her excusal did not leave appellant without counsel; Captain Riegler, individually requested by appellant, remained on the case. Under the circumstances, we hold that there was good cause to excuse Captain Peterson, and the military judge did not err by granting her request to withdraw.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and WISS concur.