OPINION OF THE COURT
FINCHER, Judge:
Contrary to his pleas, the appellant was convicted by a special court-martial composed of officer and enlisted members of one specification of desertion, three specifications of committing indecent assault, five specifications of communicating indecent language, and one specification of conduct prejudicial to good order and discipline, in violation of Articles 85 and 134, UCMJ, 10 U.S.C. §§ 885, 934. He was sentenced to a bad-conduct discharge, hard labor without confinement for 3 months, and reduction to E-l. The convening authority approved the sentence, but converted the hard labor without confinement into a fine of $2,000.00.
The appellant raises four issues on appeal, but we only discuss one of them. We hold that the military judge erred in severing the appellant’s attorney-client relationship with his trial defense counsel and therefore, the findings and sentence are set aside.

Background

On the eve of the appellant’s court-martial, Captain MS, one of his military defense counsel, had a meeting with the Bolling Air Force Base (AFB) staff judge advocate (SJA) and other members of his staff. The purpose of this meeting was to discuss alternatives to a court-martial for the appellant. After discussing several options, they reached an agreement: Instead of going to trial, the appellant would accept nonjudicial punishment under Article 15, UCMJ, 10 U.S.C. § 815. If his commander found that he had committed the offenses, she could then decide to initiate administrative discharge proceedings against him. In that event, the appellant agreed to unconditionally waive his *560 right to an administrative discharge board. Throughout this process, the already-preferred court-martial charges and specifications would remain pending.
In accordance with the agreement, the appellant immediately requested a delay in the trial. He also voluntarily extended his fast-approaching estimated time of separation (ETS) date for a month, although the ETS extension was never discussed in the pretrial negotiations. The appellant’s commander served him with an Article 15, found that he had committed the offenses, and imposed punishment consisting of a reduction to E-4 and forfeiture of $800 pay per month for two months. The appellant appealed the punishment.
In the meantime, the clock was ticking on the appellant’s ETS extension. Accordingly, he began outprocessing through the separations section at the Military Personnel Flight (MPF). He was familiar with the procedures because he had formerly been the noncom-missioned officer in charge of the separations section. In anticipation of the appellant’s final separation, the MPF prepared his separation orders and his Department of Defense (DD) Form 214, Certificate of Release or Discharge from Active Duty.
On the day before the appellant’s ETS extension ran out, the legal office discovered that the appellant was scheduled to separate from the Air Force the next day. The SJA immediately sent a letter to the Mission Support Squadron commander informing her that the appellant’s charges were still pending and that he was not entitled to separate on his ETS. He also sent paralegals from the legal office to the separations section to ensure the appellant was not allowed to separate. Apparently, the news did not reach the entire separations staff.
Three days after the appellant’s ETS extension expired, the appellant gave a written memorandum to his first sergeant stating that he did not want to voluntarily extend his enlistment any further. He cited Air Force Instruction (AFI) 36-3208, Administrative Separation of Airmen, ¶2.8 (10 Mar 2000),[1] for the proposition that he should be allowed to separate. In response to the appellant’s memorandum, his commander called him in and explained that the court-martial charges, as well as his Article 15 appeal, were still pending. She told him he could either extend his ETS and continue with the Article 15 process, or refuse and face a court-martial. The appellant elected to complete the extension form, but on the top of it he wrote that he considered himself to be a civilian. The legal office deemed this a repudiation of the agreement and recommended to the commander that she set aside the Article 15 and pursue the pending court-martial charges.
The appellant continued outprocessing and returned to the separations section, where he picked up his DD Form 214. He also received a final accounting of his military pay. On the same day, at the behest of the legal office, the separations office prepared an order rescinding the appellant’s separation orders. Despite this order, the appellant continued to outprocess. He did not, however, complete all of the items on his out-processing checklist, such as a final inspection of his base housing and a separation physical.
In the course of these events, the appellant sought the advice of FB, a civilian attorney. FB contacted the base legal office about the appellant’s status and sent them a copy of the appellant’s DD Form 214. The appellant then contacted his first sergeant and told her that on the advice of his civilian counsel he would not be reporting for duty because he thought he was a civilian. His first sergeant told him that if he did not report for duty, his status would be changed to absent without leave. Despite this warning, the appellant failed to report for duty the next day.
A week later, the Air Force Office of Special Investigations apprehended the appellant at his home in Temple Hills, Maryland, and returned him to Bolling AFB. His command *561 er placed him in pretrial confinement. FB testified during the pretrial confinement hearing. He explained that the appellant had provided his office with several documents supporting his claim that he was a civilian. Based on this documentation, FB advised the appellant that he should not continue to report for duty. The appellant’s commander then preferred three additional charges against him: One specification each of desertion, stealing a DD Form 214, and receiving stolen property (the DD Form 214), in violation of Articles 85, 121, and 134, UCMJ, 10 U.S.C. §§ 885, 921, 934. The desertion charge survived, but the military judge ultimately dismissed the other two additional charges.
FB and his associate, JN, along with Captain MS, represented the appellant at the beginning of his trial. They litigated a series of motions, including an extensive jurisdictional motion in which the military judge ruled that the court retained jurisdiction over the appellant despite the expiration of his ETS. They also defended against a motion by the prosecution to disqualify the civilian defense counsel from the case on the grounds that it would be necessary for FB to testify as a witness on the desertion charge.
The military judge initially denied the prosecution’s disqualification motion. However, the military judge allowed the prosecution to renew and supplement their motion. On reconsideration, he ruled in the government’s favor, citing concerns about potential pretrial ineffective assistance of counsel regarding the desertion offense. He also expressed misgivings about FB continuing his representation of the appellant because it ran afoul of the Air Force Rules of Professional Conduct (AFRPC) (15 Oct 2002). Ultimately, the military judge ruled that FB and JN could not represent the appellant. In light of this ruling, Captain MS asked to be released from his defense responsibilities and the military judge granted his request. The military judge granted a continuance so the appellant could obtain new counsel. When the court-martial reconvened, CG, a new civilian counsel, represented the appellant, along with a new, detailed military defense counsel. When the military judge re-advised the appellant of his rights to counsel, the appellant renewed his objection to the disqualification ofFB.

Discussion

We review issues affecting the severance of an attorney-client relationship de novo. United States v. Blaney, 50 M.J. 533, 539 (A.F.Ct.Crim.App.1999) (citing United States v. Iverson, 5 M.J. 440 (C.M.A.1978)). An accused has a fundamental right to be represented by counsel at trial. Faretta v. California, 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). For this fundamental right to be fully realized, his counsel must also represent him effectively. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Intertwined with this right to effective representation is the interest in allowing an accused to participate in the selection his counsel. United States v. Hanson, 24 M.J. 377, 379 (C.M.A.1987); United States v. Palenius, 2 M.J. 86, 92 (C.M.A.1977). This interest is stronger when it concerns civilian defense counsel an accused hires at his or her own expense. Once established, this important bond between attorney and client is not easily broken. In fact, “[ajbsent a truly extraordinary circumstance rendering virtually impossible the continuation of the established relationship, only the accused may terminate the existing affiliation with his trial defense counsel prior to the case reaching the appellate level.” Iverson, 5 M.J. at 442-43.
As strong as this bond is, however, it is not indestructible. The attorney-client relationship may be broken over defense objection when there is “good cause” to sever it. United States v. Baca, 27 M.J. 110, 118-19 (C.M.A.1988) (quoting United States v. Eason, 45 C.M.R. 109, 1972 WL 14135 (C.M.A.1972)); see also Article 38, UCMJ, 10 U.S.C. § 838; Rule for Courts-Martial 506(c). But application of the seemingly expansive “good cause” phrase cannot belie the strength of the bond. “Good cause” must be strong enough to overcome an accused’s Constitutional right to counsel. Such determinations are necessarily fact specific. In the appellant’s case, we looked at three key areas in determining whether the military judge’s finding of “good cause” was clearly errone *562 ous: (1) The timing of the disqualification decision; (2) Whether the trial defense counsel was ineffective; and (3) Whether it would have been a violation of the AFRPC for the defense counsel to continue representing his client. United States v. Burris, 21 M.J. 140, 144 (C.M.A.1985).

Timing of the Disqualification Decision

Severing an attorney-client relationship because of something that might happen in the future is generally not a good idea. See United States v. Smith, 35 M.J. 138, 141 (C.M.A.1992) (citing In re Grand Jury Subpoena (Legal Services Center), 615 F.Supp. 958, 964 (D.Mass.1985)) (“Government must show ‘that there is no other reasonably available source for’ the evidence” to compel a lawyer to testify against his client). Though it might seem like the best thing to do from a judicial economy standpoint, judicial economy is an insufficient justification for abrogating an accused’s right to counsel. Eason, 45 C.M.R. at 111 (“right to counsel is a basic right, and cannot be manipulated in the name of expeditiousness without endangering that right to the status of an empty formality”). See also United States v. Murray, 42 C.M.R. 253, 1970 WL 7062 (C.M.A.1970) (attorney-client relationship may not be severed for administrative convenience). In the appellant’s case, the military judge disqualified FB because he thought he would have to be a witness at trial. But he made this decision before the prosecution had even presented its case. At that point in the trial, the defense was under no obligation to decide how they would defend against the desertion charge. They could have elected not to challenge that specification at all. It is also possible that, as the evidence unfolded, testimony by the defense counsel would have become unnecessary. The military judge severed the relationship before these issues ripened.

Effective Assistance of Counsel

When the military judge reconsidered his ruling on disqualifying the appellant’s civilian counsel, he relied on United States v. Sorb-era, 43 M.J. 818 (A.F.Ct.Crim.App.1996), in which a civilian defense counsel advised his client to contact the mother of his alleged sexual abuse victim to discuss her daughter’s testimony. The accused followed this advice, resulting in the addition of an obstruction of justice charge. At trial, he was acquitted of the indecent assault, but convicted of obstruction. On appeal, this Court ruled that the pretrial advice of the attorney constituted ineffective assistance of counsel and consequently, set aside the conviction and dismissed the charges. Id. at 819.
The appellant’s ease is distinguishable from Sorberá. First, the record is far from clear about exactly what advice FB gave to his client regarding the desertion offense. FB never testified. The appellant had received his DD Form 214, a final accounting of pay, and had passed his ETS extension. He had already accepted nonjudicial punishment in accordance with the government’s agreement not to prosecute. FB may have advised the appellant that these factors conclusively established his civilian status. We know from the record that Captain MS discussed options and consequences with the appellant. Regardless of what pretrial advice the appellant received from his attorneys, the facts before the military judge provided insufficient justification for taking the drastic step of severing the attorney-client relationship. See Iverson, 5 M.J. at 442-13.

Rules of Professional Conduct

The military judge in this case relied, at least in part, on the AFRPC in deciding to disqualify the appellant’s attorneys from representing him. AFRPC, Rule 3.7, states: “A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where: (1) the testimony relates to an uneontested issue; (2) (modified) the testimony relates to the nature of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.” See also Baca, 27 M.J. at 116-17.
The reasoning behind this rule is obvious. An accused has the right to conflict-free representation. United States v. Murphy, 50 M.J. 4, 10 (C.A.A.F.1998). See also United States v. Hicks, 52 M.J. 70, 72 (C.A.A.F.1999). If a lawyer is also a witness, the conflict could affect the lawyer’s ability to *563 zealously represent his client. But clients can waive conflicts. They can waive conflicts in business interests and conflicts with other clients. AFRPC Rules 1.7-1.9. Likewise, a client can waive the potential conflicts of interest inherent in having his attorney testify as a witness at his trial. “While a defense counsel should ‘consider’ withdrawing from a case if called as a witness for either side, testimony as a witness does not in all cases constitute ‘good cause’ to sever the lawyer-client relationship over an accused’s objection.” Smith, 35 M.J. at 142 (quoting Baca, 27 M.J. at 118-19; United States v. Babat, 18 M.J. 316, 325 (C.M.A.1984)).
In the appellant’s case, the military judge did not discuss the feasibility of a waiver of the potential conflict. He also did not explain why he found the three exceptions in AFRPC 3.7 inapplicable. Based on the information in the record of trial, we believe that all three of them could apply to this ease. If FB was ever required to testify concerning the advice he gave the appellant about failing to report for duty, it is entirely possible it would not conflict with other evidence or the representation of his client. Therefore, it could have related to an uncontested issue and be outside the purview of the rule preventing a lawyer from testifying. See Smith, 35 M.J. at 142 (“Testimony on an uneontested matter does not necessarily justify severing the relationship”). Because information could have also related to the “nature of the legal services rendered,” it may have satisfied the second exception to the Rule as well. Finally and most emphatically, there is little doubt that FB’s removal worked a substantial hardship on the appellant. The military judge’s ruling disqualified both FB and JN. Both of them were hired by the appellant and had expended considerable effort in preparing for his case. They had also ably represented the appellant in an exhaustive jurisdictional motion, as well as other pretrial motions. In addition, the military judge’s ruling led directly to Captain MS’ request to be released from the appellant’s case. Thus, the appellant did not just lose the right to be represented by one of his attorneys—he lost all three. The appellant then had to start over and put together a new defense team. It would be difficult to define this situation as anything but a substantial hardship. See Baca, 27 M.J. at 117.

Conclusion

Military judges who contemplate involuntarily severing the relationship between an attorney and a client must proceed with caution and develop all of the facts. Identifying a conflict of interest is not enough, because conflicts can be waived. Concerns about ineffective assistance of counsel are not enough, because they may be resolved through further inquiry. The AFRPC must be cautiously reviewed to determine if any exceptions apply. “Good cause shown” means justification for severing one of the most fundamental rights possessed by an accused in the military justice system. It means a competing interest is more important. No such competing “good cause” existed here. See id. See also Smith, 35 M.J. at 142.
We hold that the military judge got it exactly right when he said in his initial ruling that “[t]he attorney-client relationship is too important to sever at this point based on speculation about what the defense may or may not introduce at trial.” Consequently, when he reconsidered his ruling and severed the relationship, he got it exactly wrong. Sometimes first impressions really are the best impressions. Accordingly, the findings and sentence are set aside. A rehearing is authorized.
Judge FINCHER authored this opinion prior to his reassignment.

. The appellant actually cited his commander to ¶ 2.6, however, he correctly cites the language contained in ¶ 2.8, which states: “Extension of Enlistment When Discharge for Cause is Pending. Do not retain airmen beyond ETS involuntarily for completion of involuntary discharge processing .... If ETS is near and the involuntary action will not be completed by ETS, the immediate commander ... separates, on ETS, the airman who declines to extend.” This provision is the same in the previous version of the AFI that was in effect at the time of trial.