# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

————————————

**No. 201700216**

————————————

**UNITED STATES OF AMERICA**
Appellant

v.

**ARTEM V. KOKUEV**
Private (E-1), U.S. Marine Corps
Appellee

————————————

Review of Government Appeal Pursuant to Article 62(b), UCMJ

Military Judge: Major John L. Ferriter, USMC.
Convening Authority: Commanding General, 3d Marine Aircraft
Wing, Marine Corps Air Station Miramar, San Diego, CA
For Appellant: Major Kelli A. O'Neil, USMC; Lieutenant Megan P.
Marinos, JAGC, USN
For Appellee: Lieutenant Commander Jon T. Taylor, JAGC, USN.

————————————

Decided 8 November 2017

————————————

Before HUTCHISON, FULTON, and SAYEGH, *Appellate Military Judges*

————————————

**PUBLISHED OPINION OF THE COURT**

————————————

HUTCHISON, Senior Judge:

This case is before us on a government interlocutory appeal, pursuant to Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862, and RULE FOR COURTS-MARTIAL (R.C.M.) 908, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.). The appellee is charged with wrongful production, distribution, and use of 3, 4-methylenedioxymethamphetamine (MDMA), assault consummated by battery upon his wife, ZK, and communicating a threat, in violations of Articles 112a, 128, and 134, UCMJ, 10 U.S.C. §§ 912a, 928, and 934.

This is the appellee's second court-martial. At the first court-martial, the appellee was convicted of breaking restriction, willfully violating a lawful order, and wrongfully using cocaine and alprazolam. At that court-martial the appellee was also charged with three other offenses—assault consummated by a battery, and wrongfully using and manufacturing 3, 4-methylenedioxyamphetamine (MDA). When the government learned that it had erroneously charged the appellee with the use and manufacture of MDA instead of MDMA, it withdrew and dismissed those three charges without prejudice. The corrected MDMA offenses and the previously withdrawn and dismissed assault consummated by a battery have now been referred to this second court-martial.

The government argues that the military judge erred by: (1) denying a defense motion to sever the attorney-client relationship between the appellee and his detailed defense counsel; and (2) denying the government's request to recall ZK as a witness.

After carefully considering the record, the military judge's findings of essential facts and conclusions of law, and the submissions of the parties, we conclude: (1) that we do not have jurisdiction to review the military judge's decision to deny severance of the appellee's detailed defense counsel; and (2) the military judge did not abuse his discretion in denying the government's request to recall ZK.

## I. BACKGROUND

The appellee is in pretrial confinement and is represented by three counsel: Captain (Capt) RM, Capt JW, and civilian defense counsel (CDC) JS.

In its case-in-chief, the government presented nine exhibits and called eight witnesses, including ZK, who was called to provide evidence about the battery charge. She testified that during a drug-and alcohol-fueled night in the appellee's barracks room, the appellee hit and pushed her after they got into an argument. The government did not ask ZK any questions about the appellee's alleged manufacturing, distribution, or use of MDMA. On cross-examination, Capt RM confronted ZK with questions about her own drug use, whether she had used alcohol and drugs on the night of the alleged assault, and her pending divorce from the appellee.

Following ZK's testimony, the government called its final two witnesses. However, instead of resting, the trial counsel (TC) then requested an Article 39(a), UCMJ, session and informed the military judge (MJ) that he wanted to recall ZK to testify about the appellee's use, manufacture, and distribution of MDMA. The TC indicated that he had just learned "ten minutes ago" that ZK could testify to seeing the appellee "use and manufacture MDMA, and that

she would also see him go meet his friends."[1] The TC explained that following ZK's testimony he asked ZK's Victim's Legal Counsel whether ZK had ever seen the appellee use, manufacture, or distribute MDMA. His inquiry was prompted by a member's question that the MJ declined to ask ZK, asking, "before the night in the barracks, had you ever seen your husband do drugs before?"[2] The CDC objected to the TC's request to recall ZK based on a lack of notice, and because ZK had declined the defense's requests for interviews.

The MJ initially denied the government's request to recall ZK and asked if the government had any additional evidence to present. The government asked for and was granted an overnight recess to review their evidence and consult with supervisory counsel regarding recalling ZK.

In an Article 39(a), UCMJ, session the next day, ZK testified that the appellee used, manufactured, and distributed MDMA. She also testified that she had not previously disclosed this information to Naval Criminal Investigative Service investigators or to the prosecutors in either of her husband's courts-martial because she had been on good terms with the appellee, he had asked her not to say anything, and she did not want to provide incriminating evidence against him. She had agreed to testify only about the battery charges, in which she was the victim, after being subpoenaed. But after Capt RM cross-examined her and attacked her credibility, ZK stated she felt "bad about lying anyway, so I'm not sure why I'd protect somebody who doesn't have any care for me in the world."[3]

Following ZK's Article 39(a), UCMJ, testimony, the MJ granted the government's request to recall her to testify prior to resting their case. As a result, the CDC informed the court that they would be requesting two additional witnesses to rebut ZK's testimony. One of the witnesses was CN, a former Marine and former roommate of ZK. The MJ ordered the government to subpoena CN.

Capt RM had previously represented CN at CN's court-martial. Upon issuance of the subpoena, the CDC moved to sever Capt RM's attorney-client relationship with the appellee based on an actual conflict of interest. The appellee opposed severing his attorney-client relationship with Capt RM. The MJ ordered Capt RM to submit a sealed affidavit[4] explaining the nature of the conflict. Included with Capt RM's affidavit was an affidavit from the Marine Corps' Defense Service Organization's Highly Qualified Expert, KC.

---

[1] Record at 463.

[2] *Id.* at 441; Appellate Exhibit (AE) XXIX.

[3] Record at 479.

[4] AE L.

In his affidavit, Capt RM explained the nature of his conflict with CN, while KC opined in her affidavit that a "personal conflict" existed and that it could not be waived. She further stated that she participated in a conference call with Capt RM and Capt RM's state bar counsel, in which the state bar counsel provided "substantially similar advice" with respect to Capt RM's conflict of interest.[5] The court then held two closed *ex-parte* hearings with Capt RM.

Following the *ex parte* hearings, the MJ concluded that "there is not currently an actual conflict of interest for [Capt RM] in this case" and denied the motion to sever.[6] The MJ went on to reconsider his ruling that ZK could be recalled to testify. He conducted a balancing test pursuant to MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 403, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.) and found that the circumstances of ZK's belated revelations so undercut ZK's credibility as to make her testimony "minimally probative," and that there was "significant danger of confusion of the issues, undue delay, and wasting of time if the government were permitted to recall [ZK]."[7]

Based on the information he received in the closed *ex-parte* proceedings, the MJ found that recalling ZK would result in an actual conflict of interest for defense counsel, and that this conflict would require Capt RM's removal from the case. This finding weighed heavily in the MJ's MIL. R. EVID. 403 analysis. The MJ explained that the case had already experienced delays and resultant scheduling issues arising from the government's request to recall ZK and that actually recalling her would "certainly result in further confusion of the issues, more undue delay, and wasting of time."[8] Addressing the effect of Capt RM's potential excusal, the MJ noted that Capt RM was the appellee's original counsel, that he had delivered the opening statement, and that he had "obviously been very involved" in the appellee's representation, that appellee opposed his removal, and that removal of Capt RM from the case would be unfairly prejudicial to the appellee.[9]

The MJ considered several different alternatives to prohibiting the government from recalling ZK, including limiting the scope of her testimony, or the scope of CN's rebuttal testimony. Ultimately, however, the MJ found

---

[5] *Id.* at 5.

[6] *Id.* at 629.

[7] *Id.*

[8] *Id.* The delays associated with the consideration of ZK's recall had already resulted in the excusal of two court members.

[9] *Id.* at 629-30.

that permitting the government to recall ZK would likely result in an actual conflict of interest for Capt RM, and that he would have to be excused from the case. The MJ found that "[b]ased upon the late notice of this evidence, the attendant delays that would ensue, and the significant negative impact on the accused's rights to counsel . . . it would be highly and unfairly prejudicial to allow [ZK]'s testimony at this stage of the proceedings."[10]

## II. DISCUSSION

### A. Jurisdiction

Article 62, UCMJ, prescribes exacting circumstances under which the government may appeal a ruling or order of the military judge:

> (a)(1) In a trial by court-martial in which a military judge presides and in which a punitive discharge may be adjudged, the United States may appeal the following . . . :
>
> . . . .
>
> (B) An order or ruling which excludes evidence that is *substantial proof of a fact material* in the proceeding (emphasis added).

In defining the scope of our authority under Article 62, UCMJ, the Court of Appeals for the Armed Forces (CAAF) has explained that "the pertinent inquiry is not whether the court has issued a ruling on admissibility, but instead whether the ruling at issue 'in substance or in form' has limited 'the pool of potential evidence that would be admissible.'" *United States v. Wuterich*, 67 M.J. 63, 73 (C.A.A.F. 2008) (quoting *United States v. Watson,* 386 F.3d 304, 313 (1st Cir. 2004)). Not every decision that might have some remote effect on the admissibility of evidence is subject to government appeal pursuant to Article 62, UCMJ. Rather, interlocutory government appeals are restricted "to those rulings that have a *direct* rather than *incidental* effect on the exclusion of evidence." *Id.* at 75 (emphasis added) (citation omitted); *see also United States v. Vargas,* 74 M.J. 1, 7 (C.A.A.F. 2014) ("Simply put, the question is one of incidental versus direct effect").

Relying on *Vargas*, the appellee argues that the MJ's ruling denying the government's request to recall ZK was simply a "case management ruling[] intended to protect the rights of an accused and ensure the effective administration of justice," and therefore, "not reviewable under Article 62, UCMJ."[11] In *Vargas*, the government sought an overnight continuance to allow their remaining out-of-area witnesses to arrive before proceeding with

---

[10] AE LVII at 11.

[11] Appellee's Brief of 14 Sep 2017 at 12.

the remainder of the case-in-chief. The MJ denied the request. When the government indicated they could not proceed without the remaining witnesses, the MJ rested the government's case. We granted the government's appeal, finding that the "trial judge's ruling in denying the brief recess so that witnesses scheduled to be heard the next day could testify and then *sua sponte* resting the Government's case, had the direct effect of limiting the pool of potential evidence that would be admissible and excluding evidence that was substantial proof of a material fact." *United States v. Vargas*, No. 201300426, 2014 CCA LEXIS 121, at *18, unpublished op. (N-M. Ct. Crim. App. 28 Feb 2014) (citations and internal quotation marks omitted). The CAAF reversed, holding that neither ruling by the military judge had the direct effect of "'excluding evidence' as that term is used in Article 62, UCMJ." *United States v. Vargas*, 74 M.J. 1, 7 (C.A.A.F. 2014). Rather, the MJ's decisions were case management decisions that had only incidental effect on the exclusion of evidence.

The MJ's ruling precluding ZK from testifying here is readily distinguishable from the MJ's ruling in *Vargas*. The CAAF recognized in *Vargas* that "[t]he military judge did not make any ruling which held that the government's evidence was inadmissible nor did she indicate that she would not allow the introduction of properly admissible evidence." *Vargas*, 74 M.J. at 7. Here, the MJ applied the MIL. R. EVID. 403 balancing test and determined ZK's proffered testimony was inadmissible. As a result, the MJ's decision had the direct effect of excluding ZK's testimony that she observed the appellee use and manufacture MDMA. We have jurisdiction to decide a government appeal of this ruling.

However, the MJ's denial of the defense's motion to excuse Capt RM was not an order or ruling that excluded evidence. Nor was the exclusion of evidence more than incidental to the MJ's ruling. The MJ's ruling on the counsel disqualification issue did not address the admissibility of any evidence. Rather, it was a determination on the part of the MJ that—as the case stood at the time of the ruling—Capt RM's representation was not affected by an actual conflict of interest.

In *United States v. Browers,* the Court of Military Appeals considered whether the denial of a continuance requested so that the government could obtain two witnesses constituted the exclusion of evidence. 20 M.J. 356 (C.M.A. 1986). That court reasoned that "[m]ost lawyers think of exclusion of evidence as a ruling made at or before trial that certain testimony, documentary evidence, or real evidence is inadmissible. . . . and we see no reason to believe that Congress had any different intention in drafting Article 62(a)(1)." *Id.* at 360. Similar to both *Vargas* and *Browers*, the MJ's determination, here, that Capt RM did not yet have a conflict of interest was

not a ruling that excluded evidence. This ruling does not satisfy the jurisdictional requirements of Article 62(a)(1), UCMJ.

Nevertheless, the appropriateness of the MJ's ruling on the defense motion to sever is not entirely irrelevant to our determination of whether the MJ erred by denying the government's request to recall ZK. We review a MJ's ruling to exclude evidence for an abuse of discretion. *United States v. Diaz*, 69 M.J. 127, 131 (C.A.A.F. 2010). "A military judge abuses his discretion when his findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law. *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008) (citations omitted). Thus, to the extent the MJ's decision to exclude evidence depends on a clearly erroneous finding of fact or an erroneous view of the law, we will consider such an error in our determination of whether the MJ abused his discretion in excluding evidence.

## B. Analysis

### *1. Standard of review*

In reviewing an interlocutory appeal by the government, we "may act only with respect to matters of law[.]" Art. 62(b), UCMJ; R.C.M. 908(c)(2). We are, therefore, "bound by the military judge's factual determinations unless they are unsupported by the record or clearly erroneous" and we lack the "authority to find facts in addition to those found by the military judge." *United States v. Gore*, 60 M.J. 178, 185 (C.A.A.F. 2004). "We conduct a *de novo* review of [the military judge's] conclusions of law." *United States v. Stevenson*, 52 M.J. 504, 505 (N-M. Ct. Crim. App. 1999), *rev'd on other grounds*, 53 M.J. 257 (C.A.A.F. 2000); *see also United States v. Greene*, 56 M.J. 817, 822 (N-M. Ct. Crim. App. 2002).

### *2. Scope of MIL. R. EVID. 403*

MIL. R. EVID. 403 states:

> The military judge may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence.

The appellant argues that the MJ erred in denying the government's request to recall ZK by misapplying MIL. R. EVID. 403. Specifically, the government contends that no military case law analyzing MIL. R. EVID. 403 has concluded that "potential or actual conflicts of interest involving the right

to counsel" satisfy the rule's prejudice prong.[12] The proper construction of a military rule of evidence is a question of law we review *de novo. LRM v. Kastenberg,* 72 M.J. 364, 369 (C.A.A.F. 2013) (citing *United States v. Matthews,* 68 M.J. 29, 35-36 (C.A.A.F. 2009); *United States v. Lopez de Victoria,* 66 M.J. 67, 73 (C.A.A.F. 2008)). Therefore, we must determine, as a matter of law, whether "unfair prejudice" within the context of MIL. R. EVID. 403 can include the harm associated with severing an accused's attorney-client relationship.

The appellant points out that in *United States v. Collier,* the CAAF concluded that the term "'unfair prejudice' in the context of [MIL. R. EVID.] 403 'speaks to the capacity of some concededly relevant evidence to lure the *factfinder* into declaring guilt on a ground different from proof specific to the offense charged.'" 67 M.J. 347, 354 (C.A.A.F. 2009) (citing *Old Chief v. United States*, 519 U.S. 172, 180 (1997)) (emphasis in original). The CAAF went on to explain that MIL. R. EVID. 403 "addresses prejudice to the integrity of the trial process, not prejudice to a particular party or witness." *Id.*; *but see United States v. Bess,* 75 M.J. 70, 77 (C.A.A.F. 2016) (citing MIL. R. EVID. 403 and admonishing courts-martial to implement procedures for the production of evidence requested by members during deliberations "to ensure that *no unfair prejudice is afforded to either party*.") (emphasis added).

*Collier* and the majority of cases analyzing MIL. R. EVID. 403's unfair prejudice prong do so in the context of admitting or excluding otherwise relevant but inflammatory impeachment or propensity evidence, or evidence of uncharged misconduct.[13] *Collier* and *Old Chief,* while clearly binding precedent, simply did not contemplate a scenario in which the government would seek to introduce, near the end of trial, newly discovered evidence that has the potential to create a disqualifying conflict of interest for a criminal defendant's long-time detailed defense counsel.

Although no military appellate court has examined the relationship between the admission of relevant evidence and its potential prejudice to an accused's attorney-client relationship, at least one federal circuit court has. In *United States v. Messino*, the Seventh Circuit Court of Appeals asked

---

[12] Appellant's Brief of 23 Aug 17 at 23.

[13] *See e.g. Collier,* 67 M.J. at 354-55 (holding the MJ erred in excluding cross-examination questions regarding the appellant's homosexual relationship with the government's main witness); *United States v. Reynolds,* 29 M.J. 105, 111 (C.M.A. 1989) (establishing a three-part test for admissibility of uncharged misconduct and holding "[i]n order to be admissible, the evidence . . . must be carefully balanced to insure that 'its probative value' is not 'substantially outweighed by the danger of unfair prejudice.'") (quoting MIL. R. EVID. 403).

whether a district court may ever exclude relevant testimony to resolve a conflict of interest. 181 F.3d 826, 829 (7th Cir. 1999). The court answered affirmatively, first noting, that under FEDERAL RULE OF EVIDENCE (FED. R. EVID.) 403, "district judges are clearly vested with some discretion to exclude evidence." *Id.* Next, citing FEDERAL RULE OF CRIMINAL PROCEDURE (FED. R. CRIM. PROC.) 44(c) (giving trial judges the discretion to fashion remedies arising from joint representation), and *Wheat v. United States,* 486 U.S. 153, 163 (1988) (permitting trial judges to disqualify attorneys despite a waiver of conflict), the Court observed that district court judges are "given broad discretion to fashion remedies to avoid conflicts of interest." *Messino*, 181 F.3d at 830 (citations omitted). Given a district court judge's broad discretion to both exclude relevant evidence and to remedy conflicts, the Seventh Circuit concluded that it was appropriate "on rare occasions" for a district court to "exclude evidence to resolve a conflict of interest." *Id.* "Without precisely delineating the scope of a district court's discretion" to exclude relevant to resolve a conflict of interest, the Seventh Circuit noted that a balancing of the kind contemplated in FED. R. EVID. 403 was appropriate. *Id.* Specifically, "the probative value of the evidence must be weighed against the negative consequences of admitting the evidence." *Id.; see also United States v. Gearhart,* 576 F.3d 459, 464 (7th Cir. 2009) ("[W]e have held that the introduction of evidence that would generate a conflict of interest is subject to analysis under Rule 403 of the FEDERAL RULES OF EVIDENCE") (citing *Messino,* 181 F.3d at 830).

Finally, the Seventh Circuit has also recognized that "disqualification of [defense] counsel" implicates matters of constitutional import; specifically in *Gearhart,* the Sixth Amendment right to counsel of choice. *See Gearhart,* 576 F.3d at 464 ("disqualification of a defendant's counsel of choice can in principle pose a Sixth Amendment problem.") (citations and internal quotation marks omitted).

We find the Seventh Circuit's rationale persuasive. First, like district court judges, military judges have broad discretion to remedy conflicts of interest. Indeed, the language from FED. R. CRIM. PROC. 44(c)—relied on by the *Messino* court—granting district court judges the discretion to remedy conflicts arising from joint representation is nearly identical to the language of R.C.M. 901(d)(4)(D), which governs military judges under similar circumstances.[14] Likewise, military courts have applied *Wheat* and held that

---

[14] FED. R. CRIM. PROC. 44(c)(2) states:

> Court's Responsibilities in Cases of Joint Representation. The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there

military judges have discretion to disqualify counsel when there is "a serious potential for conflict." *United States v. Rhoades*, 65 M.J. 393, 397 (C.A.A.F. 2008) (citations and internal quotation marks omitted). Recently, we recognized that "[t]he military judge must be allowed substantial latitude" in addressing conflicts of interest "'not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.'" *United States v. Betancourt*, No. 201500400, 2017 CCA LEXIS 386, at *40, unpublished op. (N-M. Ct. Crim. App. 6 Jun 2017) (quoting *Wheat*, 486 U.S. at 163).

Second, MIL. R. OF EVID. 403 is identical to its federal counterpart and, therefore, it too "delineate[s] a zone of discretion within which judges may exclude evidence." *Messino*, 181 F.3d at 829-30. Finally, much like the appellant's Sixth Amendment right to counsel of choice in *Gearhart*, Private Kokuev, while not threatened with the loss of counsel of choice, does have the statutory "right to representation by military counsel provided at no expense[.]" *Rhoades*, 65 M.J. at 394 (citing Art. 38(b)(3), UCMJ, 10 U.S.C. § 838(b)(3) (2000)). Moreover, the fact that the appellee has a second military counsel does not ameliorate the appellee's potential loss of Capt RM, because "continuation of an established attorney-client relationship is *fundamental* in the military justice system." *United States v. Baca*, 27 M.J. 110, 118 (C.M.A. 1988) (emphasis added) (citing *United States v. Palenius,* 2 M.J. 86 (C.M.A. 1977)).

In sum, the same factors present in *Messino* and *Gearhart* that led the Seventh Circuit to adopt the FED. R. EVID. 403 balancing test are present here and we adopt the Seventh Circuit's reasoning.[15] Therefore, we hold that

---

is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.

Similarly, R.C.M. 901(d)(4)(D) directs the military judge to:

Promptly inquire, whenever two or more accused in a joint or common trial are represented by the same detailed or individual military or civilian counsel, or by civilian counsel who are associated in the practice of law, with respect to such joint representation and shall personally advise each accused of the right to effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the military judge shall take appropriate measures to protect each accused's right to counsel[.]

[15] While not specifically adopting the FED. R. EVID. 403 balancing test, other courts of appeal have "adopted a balancing test when the government seeks to

in conducting his MIL. R. EVID. 403 balancing test, the MJ properly considered, as part of his analysis of unfair prejudice, the "negative consequences" that would follow for the appellee and his attorney-client relationship with Capt RM. In so holding, we are mindful that the Military Rules of Evidence "should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination."[16] A narrow reading of "unfair prejudice" which leaves no room for an MJ to exclude minimally probative evidence that has the potential to impact an accused's constitutional right to counsel, does little to promote the development of evidence law, and endangers the goal of securing a just result.

Of course, even if the prejudice associated with removing counsel from a case is a proper matter for the MJ to have considered in his balancing test, it may still be possible that the MJ abused his discretion in applying MIL. R. EVID. 403. Therefore, we next examine the MJ's application of the 403 balancing test to the facts presented here.

### 3. Application of MIL. R. EVID. 403

As we noted previously, the MJ's decision to deny the government's request to recall ZK was precipitated by the conflict of interest ZK's testimony would pose for the appellee's detailed defense counsel. If that decision was error, then the MJ's ultimate decision to deny the government's request to recall ZK would be an abuse of discretion. As a result, we first examine the MJ's ruling denying the defense motion to sever Capt RM's attorney-client relationship with the appellee.[17]

---

introduce evidence that would create a conflict of interest for the defendant's attorney." *Gearhart*, 576 F.3d at 464 (citations omitted). S*ee United States v. James,* 708 F.2d 40, 45 (2d Cir. 1983) ("[I]nterests of the government . . . and the public weigh more heavily here" than interests of defendants in maintaining counsel of choice); *United States v. Garcia*, 517 F.2d 272, 273 (5th Cir. 1975) ("[R]esolution of the problem requires a cautious and sensitive consideration and balancing of individual constitutional protections, public policy and public interest in the administration of justice, and basic concepts of fundamental fairness").

[16] MIL. R. EVID. 102.

[17] As we noted *supra*, Article 62, UCMJ, does not grant this court jurisdiction to review the MJ's decision denying severance of the attorney-client relationship. Our analysis of that decision is included here solely to determine whether the MJ's corresponding decision to deny the government's request to recall ZK—a ruling that is subject to review under Article 62, UCMJ—was informed by an erroneous view of the law. *Miller*, 66 M.J. at 307.

We review a military judge's decision whether to disqualify a defense counsel based upon a conflict of interest for an abuse of discretion. *United States v. Odom*, 53 M.J. 526, 531 (N-M. Ct. Crim. App. 2000) (citing *Wheat,* 486 U.S. at 163-64). Whether an actual conflict of interest exists is a mixed question of law and fact requiring our *de novo* review. *United States v. Smith*, 44 M.J. 459, 460 (C.A.A.F. 1996). R.C.M. 505 and 506 discuss circumstances under which an established attorney-client relationship between an accused and a defense counsel may be severed. Specifically, R.C.M. 506(c) authorizes the excusal of a defense counsel "by the military judge upon application for withdrawal by the defense counsel for good cause shown." This court has recognized that "good cause" includes instances where there is a conflict of interest or breach of ethical duties. *See Wuterich v. United States*, No. 200800183, 2011 CCA LEXIS 148, at *6, unpublished op. (N-M. Ct. Crim. App. 25 Aug 2011) ("Counsel may be disqualified if a party-litigant brings an issue of conflict of interest or breach of ethical duties to the attention of the court.") (citing *United States v. Humpherys*, 57 M.J. 83, 88 (C.A.A.F. 2002)).

Judge Advocate General Instruction (JAGINST) 5803.1E, Rule 1.7 governs conflicts of interest for attorneys practicing within the Navy and Marine Corps. Rule 1.7(a) states, in relevant part:

> . . . a covered attorney shall not represent a client if the representation of that client involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is significant risk that the representation of one or more clients will be materially limited by the covered attorney's responsibilities to another client, a former client or a third person or by a personal interest of the covered attorney.[18]

Without revealing the facts or analysis giving rise to Capt RM's potential conflict of interest—which remain under seal—we conclude, following our *de novo* review, that no actual conflict of interest currently exists between Capt RM and CN. In reaching his findings of fact, the MJ examined extensively both Capt RM and Ms. KC, considered their affidavits, and correctly analyzed the rules of professional conduct. The MJ's findings of fact establish that Capt RM's attorney-client relationship with CN had ceased and that Capt RM believed, after discussion with his supervisory counsel, KC, and his state bar, that no actual conflict would exist if ZK was not recalled to testify. We find that military judge's findings of fact are supported by the record and not clearly erroneous. *Rhoades*, 65 M.J. at 397. Accordingly, we concur with the MJ's conclusion that the potential conflict had not ripened into an actual

---

[18] JAGINST 5803.1E (20 Jan 2015) at 35.

conflict of interest. Consequently, we find no abuse of discretion in the MJ's decision to deny the defense motion to sever Capt RM's attorney-client relationship with the appellee. *See United States v. Barnes*, 63 M.J. 563, 566 (A.F. Ct. Crim. App. 2006) ("Severing an attorney-client relationship because of something that might happen in the future is generally not a good idea.") (citing *United States v. Smith*, 35 M.J. 138, 141 (C.M.A. 1992)).

Turning finally to the MJ's denial of the government's request to recall ZK, we review a military judge's decision to exclude evidence for an abuse of discretion. *United States v. Diaz*, 69 M.J. 127, 131 (C.A.A.F. 2010). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable, or clearly erroneous.'" *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (quoting *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000)). Therefore, a military judge has wide discretion in determining the admissibility of evidence, and a decision to admit or exclude evidence based on MIL. R. EVID. 403 is within the sound discretion of the trial judge. *United States v. Smith*, 52 M.J. 337, 344 (C.A.A.F. 2000). Appellate courts give a military judge "more deference if [he] properly conducts the balancing test and articulates [his] reasoning on the record." *United States v. Carter*, 74 M.J. 204, 207 (C.A.A.F. 2015) (citation omitted); *see also United States v. Flesher,* 73 M.J. 303, 312 (C.A.A.F. 2014) ("[W]here the military judge places on the record his analysis and application of the law to the facts, deference is clearly warranted" (citations and internal quotation marks omitted)). Therefore, a military judge who conducted a proper balancing test under MIL. R. EVID. 403 will not be overturned absent a clear abuse of discretion. *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009).

Here, the MJ placed his MIL. R. EVID. 403 analysis on the record; we therefore accord him appropriate deference. First, the MJ determined that the evidence sought to be introduced by the government—ZK's testimony—was "minimally probative based upon the circumstances of when she disclosed the information . . . and the anticipated cross-examination" by the defense.[19] The cross-examination would almost certainly focus on the fact that ZK had not previously disclosed, when asked, any knowledge of the appellee's involvement with MDMA and only brought up this new evidence after having her credibility attacked on the witness stand. The MJ correctly pointed out that "prior to learning of this potential testimony 10 minutes before they were otherwise planning to rest, the [g]overnment had presented what it otherwise deemed to be the best case it had available to them after

---

[19] Record at 629.

more than a year of investigation and months of preparation for trial."[20] As a result, the MJ concluded that when assessed within the context of the rest of the government's case, the "net gain" from the inclusion of ZK's testimony to the government's "overall presentation of evidence [would] be minimal."[21]

Conversely, the MJ found that if he permitted ZK to be recalled, Capt RM would have an actual conflict of interest and "would likely need to be excused from further representation of the accused."[22] The MJ noted that Capt RM was the appellee's primary military defense counsel, the longest tenured of the appellee's counsel, and had made significant contributions to the defense's preparation and presentation of the case. Specifically, Capt RM delivered the defense's opening statement to the members and conducted the cross-examination of ZK during her initial testimony. The MJ concluded that recalling ZK, and thereby requiring the excusal of Capt RM, would "significantly prejudice" the appellee.

As we noted *supra,* in conducting his MIL. R. EVID. 403 balancing the MJ considered a range of alternatives to prohibiting the government from recalling ZK. However, the MJ concluded that limiting the scope of either ZK's testimony or CN's rebuttal testimony would only "lead to more uncertainty regarding the possible manner[] in which the remainder of the . . . trial could play out; many of which would continue to implicate a[n] . . . actual conflict of interest for [Capt RM]."[23]

The appellant argues that even applying the Seventh Circuit's 403 balancing test, the MJ still abused his discretion by denying the request to recall ZK. The appellant correctly points out that in *Messino,* after first finding district courts can consider the prejudice to an accused's right to counsel in conducting their 403 analysis, that court, nonetheless, found the district court judge abused his discretion in excluding relevant witness testimony despite the "serious conflict of interest issues" such testimony would present for the accused's defense counsel. *Messino*, 181 F.3d at 828. The Seventh Circuit held that it was "undisputed" that the excluded witness's testimony "would be highly probative." *Id.* at 830. Conversely, the court found that the prejudice to the accused of a possibly "less effective," but adequate

---

[20] AE LVII at 10.

[21] *Id.* We acknowledge that in forming his conclusion regarding the relative strength of the evidence, the MJ was able to observe ZK and hear her proffered testimony during the Article 39(a), UCMJ, session.

[22] Record at 629-30.

[23] *Id.* at 629.

representation, was "regrettable" and an "inconvenience" but did not outweigh the probative value of the witness's testimony. *Id.* at 831.

There are stark differences, however, between the facts of *Messino* and the case before us. Most importantly, in *Messino* the government's interlocutory appeal challenged a pretrial order that excluded a witness's testimony. Although, presumably, Messino's attorney had done considerable pretrial work on behalf of his client, the trial had not yet started. The prejudice resulting from disqualification of counsel at that early stage is markedly different than disqualification after members have been empaneled and the government has presented nearly the entirety of its case-in-chief. The fact that Capt RM had already made significant contributions to the appellee's defense *during the trial* distinguishes this case from *Messino*.[24]

Having concluded that the MJ did not labor under an erroneous view of the law regarding the scope of "unfair prejudice," and recognizing that the MJ "has a range of choices and will not be reversed so long as the decision remains within that range," *Gore*, 60 M.J. at 187, we hold that the MJ's ruling denying the government's request to recall ZK was not beyond the range of reasonable decisions, and that he did not, therefore, abuse his discretion.

Even assuming the MJ, and by extension this court, erred in extending the Seventh Circuit's 403 analysis of "unfair prejudice" to include the harm associated with severing an accused's attorney-client relationship, we would still deny the government's appeal. The MJ also concluded that the probative value of ZK's testimony was substantially outweighed by the dangers of undue delay and wasting time. The MJ noted the issues caused by the delays to date—including the loss of two members—and concluded that permitting the government to recall ZK "would lead to an unquantifiable number of subsequent delays to the proceedings that could last for significant, unpredictable, and unknown periods of time."[25] Indeed, ZK had already testified at length and the government had prepared its case for over a year. Permitting the government to recall ZK based upon new-found information near the close of the government's case would necessarily put the appellee in the undesirable position of either seeking a continuance in order to interview ZK and prepare cross-examination on her new testimony—thereby extending

---

[24] We also note during the appeal of Gearhart's conviction, the Seventh Circuit upheld a district court's ruling that disqualified a defense counsel after conducting a FED. R. EVID. 403 balancing test. *Gearhart*, 576 F.3d at 463-65. Like *Messino*, the district court judge's ruling (in this case disqualifying counsel) occurred prior to the beginning of trial, before any evidence was presented.

[25] AE LVII at 9 (citation omitted).

his lengthy pretrial confinement—or to forego such preparation to hasten the conclusion of his trial. Finally, the MJ appropriately concluded that recalling ZK would very likely require additional litigation surrounding Capt RM's continued representation of the appellee, which would further delay the proceedings. Therefore, we also conclude that the MJ did not abuse his discretion in determining that the probative value of ZK's testimony was substantially outweighed by the dangers of undue delay and wasting time.

### III. CONCLUSION

The appeal is denied. The stay of proceedings is lifted. The record of trial is returned to the Judge Advocate General for transmittal to the convening authority.

Judge FULTON and Judge SAYEGH concur.

For the Court

R.H. TROIDL
Clerk of Court