# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KRIMBILL, BROOKHART, and RODRIGUEZ
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant DANNY E. STANLEY**
**United States Army, Appellant**

ARMY 20190034

Headquarters, U.S. Army Fires Center of Excellence and Fort Sill
Robert L. Shuck and Jacob D. Bashore, Military Judges
Lieutenant Colonel Philip M. Staten, Acting Staff Judge Advocate

For Appellant:  Captain Brianna C. Tuohy, JA; William E. Cassara, Esquire (on brief and reply brief).

For Appellant:  Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Jonathan S. Reiner, JA; Captain Anthony A. Contrada, JA (on brief).

7 August 2020

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

RODRIGUEZ, Judge:

Appellant, a drill sergeant, was tried by a general court-martial at Fort Sill, Oklahoma.  Consistent with his pleas, a military judge convicted appellant of five specifications of violating a lawful general regulation, one specification of indecent conduct, and one specification of adultery, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934 [UCMJ].  Contrary to his pleas, a panel with enlisted representation convicted appellant of two specifications of violating a lawful general regulation, two specifications of maltreatment, and one specification of aggravated sexual contact, in violation of

Articles 92, 93, and 120, UCMJ.[1] The court-martial sentenced appellant to a bad-conduct discharge, confinement of three years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

Appellant's case is now pending review before this court pursuant to Article 66, UCMJ. Appellant claims the military judge abused his discretion in allowing the panel to hear Private (PV2) CL's unsworn victim impact statement pursuant to Rule for Courts-Martial [R.C.M.] 1001A.[2] As discussed below, we find the military judge did not abuse his discretion in admitting the victim impact statement at issue and, accordingly, grant no relief.[3]

---

[1] Prior to appellant's entry of pleas, the military judge dismissed seven specifications of Charge I (Article 120), and two specifications of Charge III (Article 134). The military judge also dismissed one of appellant's convictions for violating a lawful general regulation (Specification 7 of Charge II), subject to appellant's conviction for aggravated sexual contact (renumbered Specification 4 of Charge I) surviving appellate review, as both specifications are based on the same underlying facts. Appellant was acquitted of three other Charge I specifications.

[2] Appellant also claims the evidence is legally and factually insufficient to support several of the specifications to which appellant pleaded not guilty. We disagree and find appellant's convictions both legally and factually sufficient.

[3] Further, we have given full and fair consideration to the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit. In his personally submitted matters, appellant alleges his trial defense counsel was "unprepared during" a witness's cross-examination, and did not "adequately rebut" evidence used by government counsel during closing arguments. Assuming appellant is actually claiming his counsel were ineffective at trial, he must satisfy a two-part test to establish "both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361–62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). As a reviewing court, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007) (quoting *Strickland*, 466 U.S. at 689). We are also "constrained by the principle that strategic choices made by trial defense counsel are 'virtually unchallengeable' after thorough investigation of the law and the facts relevant to the plausible options." *United States v. Akbar*, 74 M.J. 364, 371 (C.A.A.F. 2015) (quoting *Strickland*, 466 U.S. at 690–91). After reviewing the entire record of trial, we find appellant has failed to establish his trial defense counsel's conduct was deficient, much less ineffective and prejudicial, in pursuing a trial strategy that was plausible, consistent with the evidence at issue, and which fit within the wide range of reasonable professional assistance.

## BACKGROUND

Sometime after midnight on 1 December 2016, the evening prior to her Basic Training graduation, nineteen-year-old PV2 CL was getting ready to sleep after having performed her last fireguard duty obligation. Around that time, appellant, a drill sergeant for a different platoon than PV2 CL's, entered the female trainees' quarters and summoned PV2 CL to a barracks conference room. Private CL and her bunkmate, Private First Class (PFC) SM, dressed in their Army physical training (PT) uniforms and accompanied appellant to the conference room where appellant pulled up his Facebook profile and showed the trainee soldiers a photo of himself in his underwear.

Appellant then produced a bottle of alcohol and told the trainee soldiers to drink from it. After drinking from the bottle as instructed, PV2 CL testified that she soon felt sick and vomited in a nearby bathroom. Upon returning to the conference room, she vomited again into a trash can. Eventually, PFC SM, who also drank from the bottle, retrieved a mattress from the conference room's closet and fell asleep on the floor opposite where PV2 CL sat in a chair.

Private CL testified appellant instructed her to not go to sleep until she sobered up. Appellant then moved next to PV2 CL and began to rub her back and pull her hair out of her face as she continued trying to vomit. Appellant bit and "nibbled" PV2 CL's ear and kissed her mouth and neck. Appellant began to rub PV2 CL's thighs, removed her PT pants, moved her PT shorts and underwear to the side, and digitally penetrated her vagina. Private CL felt upset, weak, unwell, and drunk; she testified later she knew appellant was not supposed to do what he was doing but she did not feel like she could yell or try to fight off appellant because he was a drill sergeant and she was a trainee soldier.

Appellant told PV2 CL to remain in place and wait for him as he left the room. Private CL complied and, when he returned, she saw him unroll a condom onto his penis and sit on a chair. Private CL testified that although she did not want to have sex with appellant, he then pulled her on top of him, pulled aside her shorts and underwear, and, while covering her mouth, penetrated her vulva with his penis. As PV2 CL testified, appellant finished penetrating her and dropped her on the floor, telling her to "keep this between [them]." Shortly thereafter, appellant told PV2 CL to wake up PFC SM, which she did. Then the two trainee soldiers returned to their bunk beds to sleep for approximately one hour before their mandatory morning formation.

3

For the above acts, the court-martial convicted appellant of maltreating PV2 CL.[4] The panel acquitted appellant of the sexual assault and abusive sexual contact charges stemming from the same conduct with PV2 CL. In an Article 39(a), UCMJ, session discussing several pre-sentencing issues following the announcement of findings, appellant's defense counsel objected to a portion of PV2 CL's written unsworn impact statement offered pursuant to R.C.M. 1001A, which she wrote before the panel returned its findings.[5] Defense counsel objected specifically to the following passage:

> 6 months ago today I gave birth to my daughter [E]. From the moment I saw her I was filled with the warmth and love that I was missing, but I live in fear that she will also suffer as I have suffered. I am terrified someone will take advantage of her like I was taken advantage of. I can't trust anyone around her. No man is allowed to be near her without me there. I can never leave her alone with anyone. I have even been afraid of leaving her with her own father.

Defense counsel argued the panel had acquitted appellant of sexual assault charges against PV2 CL and, since her daughter was born subsequent to the charged conduct, her discussion of the charged acts' effect on her child was speculative and inappropriate. Private CL's Special Victim's Counsel (SVC) countered that PV2 CL "lives in fear of maltreatment, or the maltreatment of her child," and this fact is "directly related to what [appellant] was convicted of."

The military judge sustained defense counsel's objection in part, disallowing the last sentence which stated, "I have even been afraid of leaving her with her own father." The military judge explained "there's almost a connotation there of sexual abuse of a child, or something to that extent. I don't think that's necessarily what she is going for, but I wouldn't want that to be on the minds of the members. I feel that to be improper." Based on appellant's maltreatment conviction, the military judge then permitted PV2 CL to read her unsworn statement to the members except for the final sentence. The military judge also gave relevant instructions to the panel concerning unsworn testimony and evidence at trial.

---

[4] Specification 2 of Charge IV reads: "In that [appellant], U.S. Army, did, at or near Fort Sill, Oklahoma, on or about 1 December 2016, maltreat [PV2 CL], a person subject to his orders, by providing her with alcohol until she was drunk, penetrating her vulva with his finger, biting her ear, kissing her on the mouth, and penetrating her vulva with his penis, without her consent."

[5] Private CL was discharged from the Army and was a civilian by the time of appellant's trial.

## LAW AND DISCUSSION

*A. The military judge did not abuse his discretion.*

This court reviews a military judge's ruling to admit evidence for an abuse of discretion. *United States v. Hamilton*, 78 M.J. 335, 340 (C.A.A.F. 2019); *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010). "The abuse of discretion standard calls for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Baker*, 70 M.J. 283, 287 (C.A.A.F. 2011) (internal quotations and citations omitted).

Appellant claims the military judge abused his discretion in permitting PV2 CL's unsworn impact statement on appellant's conviction for maltreating her because the statement "did not directly relate to or arise from the offense" of which appellant was found guilty. Appellant argues that the court-martial panel, in acquitting him of abusive sexual contact and sexual assault of PV2 CL, found appellant and PV2 CL engaged in consensual sexual acts. Appellant claims there is no connection between her "consensual sexual encounter" with appellant and the infant daughter, and the military judge's purported error in permitting PV2 CL's unsworn statement "substantially influenced the adjudged sentence."

Article 6b, UCMJ, provides crime victims certain rights, including the "right to be reasonably heard" at a sentencing hearing relating to that offense. UCMJ art. 6b(a)(4)(B). A "victim," as defined in Article 6b, UCMJ, is "an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission" of an offense listed in the UCMJ. UCMJ art. 6b(b). Rule for Courts-Martial 1001A "facilitates the statutory right to 'be reasonably heard,'" permitting UCMJ crime victims to make a sworn or unsworn statement in non-capital cases in person or through counsel or designees. *United States v. Barker*, 77 M.J. 377, 378 (C.A.A.F. 2018); R.C.M. 1001A(b)–(e).

After examining the entire record, we find no abuse of discretion in the military judge permitting PV2 CL's unsworn statement. While the court-martial panel acquitted appellant of sexual assault and abusive sexual contact charges concerning PV2 CL, the panel did convict appellant of maltreating her. As a crime victim, PV2 CL had the right, as implemented through R.C.M. 1001A, "to be reasonably heard" and make an unsworn statement about the emotional impact she suffered from appellant's maltreatment.

While appellant correctly states a crime victim's right "to be reasonably heard" is not unconstrained or unfettered, the military judge here effectively examined and limited PV2 CL's unsworn statement. On its face, and as edited by the military judge, PV2 CL's unsworn statement is well-focused on her own general lack of trust in others as a result of appellant's maltreatment. On the record, the

5

military judge examined the statement and found PV2 CL's words to be about her, not about her child or the impact of appellant's actions on her child. Nothing in the judge's instructions to the panel appears to be an inaccurate or a misstatement of the law concerning unsworn testimony. Thus, the military judge's decision to permit PV2 CL's unsworn testimony does not appear be "arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *Baker*, 70 M.J. at 287.

### B. Even if the military judge erred, appellant suffered no prejudice.

A court-martial's findings or sentence "may not be held incorrect on the ground of an error in law unless the error materially prejudices the substantial rights of the accused."[6] UCMJ art. 59(a).

If a military judge errs in admitting evidence at sentencing, the test for prejudice "is whether the error substantially influenced the adjudged sentence." *Hamilton*, 78 M.J. at 343 (citations omitted). This court reviews "the prejudicial effect of an erroneous evidentiary ruling de novo." *United States v. Kohlbek*, 78 M.J. 326, 334 (C.A.A.F. 2019) (quoting *United States v. Savala*, 70 M.J. 70, 77 (C.A.A.F. 2011) (internal quotation marks omitted)). To determine whether an error substantially influenced a sentence, we consider "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *United States v. Bowen*, 76 M.J. 83, 89 (C.A.A.F. 2017). An error is more likely prejudicial if the fact was not already obvious from the other evidence presented at trial and would have provided new ammunition against an appellant. *United States v. Harrow*, 65 M.J. 190, 200 (C.A.A.F. 2007).

Even if the military judge erred in admitting the objected-to portion of PV2 CL's unsworn statement, we find its admission did not substantially influence the sentence. The government's case-in-chief against appellant was strong and, though brief, the government's sentencing case was concisely effective. Besides PV2 CL's unsworn statement, the government's sentencing case included the sworn testimony of another trainee soldier, PV2 JM.[7] Like PV2 CL, PV2 JM was a former soldier by the time of appellant's trial and she told the panel about the psychological impact of appellant's misconduct on her, and how she left the Army as a direct result of appellant's abuse. In sum, the government's sentencing case centered on how two young women (PV2 JM was only seventeen years old at the time of appellant's

---

[6] Appellant challenges the admission of PV2 CL's unsworn statement as improper under R.C.M. 1001A and does not assert constitutional error. As such, we assess prejudice under Article 59, UCMJ. *Hamilton*, 78 M.J. at 343 n.10 (citing *United States v. Diaz*, 69 M.J. 127, 137 (C.A.A.F. 2010)).

[7] Against his pleas, appellant was convicted of aggravated sexual contact of PV2 JM on or about 21 October 2016, causing her to touch, through clothing, his genitalia by grabbing her arm and pulling her hand onto his erect penis.

aggravated sexual contact), who once looked forward to serving in the Army, had left the service as a result of the emotional impact appellant's actions had on them.

The defense's case-in-chief consisted of one witness who testified on the effects of alcohol and two stipulations of expected testimony. At sentencing, the defense called multiple witnesses who testified about appellant's character. While longer than the government's presentencing case, it was not impactful enough to overcome the lasting negative effects appellant's crimes had on PV2s CL and JM and the fact appellant perpetrated those offenses while in the ultimate position of authority over the trainee soldiers. Compared to the government's case, we find the defense case was relatively weaker.

Addressing materiality and quality, we conclude the objected-to portion of PV2 CL's unsworn statement was a quantitatively significant amount of the total statement, which spans just over one page in the record of trial. Even so, trial counsel did not reference that portion of PV2 CL's unsworn statement in his sentencing argument. Additionally, in the rest of PV2 CL's unsworn statement, the members heard from PV2 CL about losing trust in people other than her friends, having to seek therapy, and how appellant's misconduct "haunts [her] dreams." As such, the objected-to portion of PV2 CL's unsworn statement was neither of greater or lesser materiality than anything else contained in the statement.

Finally, we note the relatively light sentence appellant ultimately received. After conditionally dismissing Specification 7 of Charge II and merging Specifications 3 and 4 of Charge II, Charge III and its Specifications, and Specification 2 of Charge IV for purposes of sentencing, appellant faced a maximum punishment to confinement of thirty-five years. He faced twenty years' confinement based solely on his aggravated sexual contact conviction. The trial counsel argued for a sentence to confinement of eight years; defense counsel did not argue for any specific sentence. Nevertheless, the court-martial sentenced appellant to only three years' confinement, less than ten percent of his total punitive exposure and less than half of the sentence advanced by the trial counsel as appropriate.

Considering the entire record, the relevant prejudice factors, and appellant's adjudged sentence compared to his total punitive exposure, we do not find the objected-to portion of PV2 CL's unsworn statement, even if admitted in error, substantially influenced appellant's sentence.

## CONCLUSION

The finding of guilty for Specification 7 of Charge II is SET ASIDE and that specification is CONDITIONALLY DISMISSED. *See United States v. Britton*, 47 M.J. 195, 203 (C.A.A.F. 1997) (Effron, J., concurring); *United States v. Hines*, 75 M.J. 734, 738 n.4 (Army Ct. Crim. App. 2016). Our dismissal is conditioned on Specification 4 of Charge I (as renumbered) surviving the final judgment as to the

legality of the proceedings. *See* UCMJ art. 57(c)(2) (defining final judgment as to the legality of the proceedings). The remaining findings of guilty and the sentence are AFFIRMED.

Chief Judge KRIMBILL and Senior Judge BROOKHART concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court